IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1851, IN THE THIRTY-FIFTH
YEAR OF THE STATE.

---

## JUDY *v.* WILLIAMS and Others.

Courts will always endeavor, if possible, to give effect to the intention of
the testator, but that intention cannot be gathered wholly from ·facts,
*dehors* the will.

Proof that by a devise to a parent the testator meant a devise to the children of such parent, even although the parent was known to be dead at
the time the will was made, is not admissible.

It is necessary that every one claiming in the character of a devisee should
answer the description the devisor has given.

APPEAL from the *Jackson* Probate Court.

*Monday,*
*May*

SMITH, J. — The proceedings· in this case were commenced by a petition, filed by the appellant, for th̶ pa̶
tition of certain real estate. The petitioner cla̶̶ as
a devisee under a will made by one *John F. Judy̶*, T̶h̶e̶
testator, after bequeathing a lot of land to a gra̶̶̶̶,
and certain bonds and accounts to his son *Isaac*, d̶evis̶
all the residue of his real and personal property " ̶̶
the rest of my children, to be equally divided amongst
them, namely, *Mary, Drusilla, Deborah, John, Ann,* and
*Reason.*"

May Term,
1851.

JUDY
v.
WILLIAMS.

It appeared that *Drusilla* and *John*, two of the persons so named as devisees, died several years before the testator, leaving issue; and the defendants were permitted to prove, by witnesses called for that purpose, certain conversations of the testator, after the death of *Drusilla* and *John*, to show that the testator's intention in naming them in his will was to devise the legacies, there devised in their names, to their children. This testimony was objected to by the petitioner, but it was admitted, and the land was accordingly partitioned in six shares.

The appellant complains of this decision. He contends that the devises to those persons who were dead, are void, and that he, as one of the four who was living at the time of the testator's death, is entitled to one-fourth of the land.

We do not think any precedent can be adduced for the admission of such testimony as was received in this case. It is true that, in the construction of wills, the Courts always endeavor to give effect, if possible, to the intention of the testator, but that intention must be in some way manifested by the will itself. It cannot be gathered wholly from facts *dehors* the will. With regard to the devisee, it is necessary that every one ·claiming in that character should answer the description the devisor has given. 1 Powell on Dev. 309. If there are any latent ambiguities in the description, in consequence of which it would apply to more than one person or class of persons, evidence of extrinsic facts may be given to show which person or persons were really meant; and if the description be sufficiently certain to distinguish the person intended from all other persons, any trifling omissions or mistakes may be corrected. Thus, if, in this case, there had been any intention manifested by the will to give to *the children* of *Drusilla* and *John*, respectively, certain portions of the estate devised, and from any mistakes in naming the children, or from any ambiguous terms or phrases used in describing them, it became uncertain whether the persons representing themselves as such were the persons meant by the testator, evidence of extrinsic facts might have

been introduced to prove that they were. There are numerous cases to this effect, but we know of none which go so far as to authorize the admission of proof, that by a devise to a parent the testator meant a devise to the children of such parent, even although the parent was known to be dead at the time the will was made.

It is not a necessary inference, from the fact that a person named as devisee was dead, that the testator meant some other person, and we are not authorized to infer the meaning of the testator from conjecture. As every person is presumed to know the law, it must be presumed that he knew such a devise would be void, and that it was his intention it should be so. Proof, therefore, that by a void devise to a deceased person the devisor meant to make a valid devise to some other persons, would be in contradiction of the intention manifested by the will when construed in accordance with legal principles, and must, according to all established rules, be inadmissible.

It is said this presumption is rebutted by proof that the testator was, in fact, ignorant of the legal effect of the language used by him, but it is this kind of proof that is inadmissible. The law does not weigh with precision the particular judgment or ability of each individual, or restrict the making of wills to those persons who are free from ignorance, but the admission of testimony of this character would, in effect, do so, since the intentions of persons supposed to be ignorant of the exact meaning of legal terms and phrases, though deliberately and solemnly expressed in writing, would be set aside for those to be gathered from loose and casual conversations. If an estate in fee-simple was devised, attempts might be made to prove that the testator was ignorant of the meaning of the terms used by him, and meant only an estate for life; and so in a thousand other instances, while after all, there might be no greater reason to believe the testator better understood the terms used in his conversations than those in his will.

The following cases are more analogous to that under consideration than any others we have seen:

In *Brett* and *Bigden's* case, (Plowd. 345,) lands were devised to *H. B.*, who died during the life of the testator; and it was held that the testator's saying to *T. B.*, who was a son of *H. B.*, that he (*T. B.*) should have all the lands devised to his father if he survived the testator, was of no effect in law, and that no regard ought to be paid to it, inasmuch as it was not written in the will.

In *Warner* v. *White*, the estate was first given to a person and his heirs who was the heir at law, with remainder over to a stranger. The first devisee died during the life of the testator, and in *Ireland*, where the case originated, it was held the estate vested in his heirs in preference to the second devisee, (on the ground of an eventual intestacy,) by descent; but the judgment was unanimously reversed in *England*. See note to *Hodgson* v. *Ambrose*, 1 Doug. 344, 1 Amer Ed. In one of Mr. *Christian's* notes to Blackstone's Commentaries, (Book II, p. 379,) it is stated that in this case the father devised his estate to his eldest son and the heirs of his body, and, upon failure of his issue, to his second son in like manner in tail; the eldest son died before the father, leaving several children, and the father, supposing the eldest of them would take under the devise, made no alteration in his will; the consequence was that the decision of the king's bench in *Ireland* was overruled in the king's bench and house of lords in *England*, the question being deemed too clear to admit of doubt.

We think that in the present case the evidence complained of was improperly admitted, and that the judgment admitting the children of *Drusilla* and *John* to a portion of the land, as devisees under the will, is erroneous.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. A. Porter*, for the appellants.

*C. L. Dunham*, for the appellees.