# FITZPATRICK v. FITZPATRICK.

1. **Will:** ADMISSIBILITY OF EXTRINSIC EVIDENCE. Parol evidence is not admissible to supply an omission or cure a defect in a will, occasioned through oversight or mistake.

2. —— Nor in any case to show the intention of the testator, except where there is a latent ambiguity arising *dehors* the will, as to the person or subject-matter, or to rebut a resulting trust.

3. —— FALSE DESCRIPTION. Where a description of property or person is in part false, but there remains sufficient to identify, the false portion will be rejected, and the devise will take effect. *Aliter*, if a sufficient description does not remain after the rejection of the false description.

4. —— Parol evidence is not admissible to show that by mistake, real estate was described as the west ¼ of the N. E. ¼ instead of the east ½ of the S. W. ¼, notwithstanding it appears that the testator owned no real estate except the E. ½ of the S. W. ¼. The cases bearing on the subject collated by MILLER, J.

*Appeal from Dubuque District Court.*

THURSDAY, JUNE 19.

THIS is an action to quiet the title to certain real estate which the plaintiff claims under the last will and testament of his mother, Ellen Fitzpatrick, deceased. The district court sustained a demurrer to the petition, and the plaintiff appeals. The further facts appear in the opinion.

*Smith, Fouke & Chapin* for the appellant.

*Wilson & O'Donnell* for the appellees.

MILLER, J.— It is stated in the petition that Ellen Fitzpatrick died about the 4th day of July, 1861, leaving surviving her, Edward Fitzpatrick, her husband, and A. E. Fitzpatrick, Ellen Fitzpatrick, Edward Fitzpatrick, Jr., and the plaintiff, her heirs at law. That prior to her death the deceased made her last will and testament, as follows:

"In the name of God, amen ! I, Ellen Fitzpatrick, of the Township of Table Mound, in the county of Dubuque, and State of Iowa, of the age of thirty-seven years, and being of sound mind, do make, publish and declare this my last will and testament in manner following, that is to say : First, I devise to my son John Fitzpatrick, his heirs and assigns, that tract of land situated in Table Mound Township, Dubuque county, Iowa, described as follows : The west half of the north-east quarter of section 23, in Table Mound Township, Dubuque county, Iowa, on the following conditions : That the said John Fitzpatrick shall not squander or make away foolishly with said premises. In case of his making away as above then I devise it to the use of my children, share and share alike. Second, I devise to my daughters, A. E. Fitzpatrick and Ellen Fitzpatrick, my bed and bedding, share and share alike, and lastly, I bequeath to my son Edward Fitzpatrick, the sum of one dollar. Last of all, I hereby appoint Thomas Burk the sole executor of my last will. In witness whereof, I have hereunto set my hand this twentieth day of June, in the year of our Lord, one thousand eight hundred and sixty-one."

(Duly signed, sealed and witnessed.)

It is alleged that this will was duly proved and admitted to probate on the 8th of January, 1872, and plaintiff appointed executor.

It is further averred that the testratrix never owned or claimed to own the land described in the will ; that she did own at the time of making the will and up to the time of her death, eighty acres of land properly described as the east half of the south-west quarter of section 23, in township 88 north, of range 2 east, of the 5th P. M., and that she was seized of no other property and claimed to own no other ; that the person who reduced the will to writing at the time the testratrix declared the same, made a mistake in writing the description of the land intended to be devised by the testatrix.

The petition asks that a decree be made reforming and correcting the will ; that it may be adjudged that the real estate last described was the real estate intended by the testatrix to

be devised to the plaintiff; that the will may be corrected so as to describe the same, and that plaintiff's title thereto be quieted, and for general relief.

Upon the question raised by the demurrer, as to the extent courts may go in receiving extrinsic evidence in aid of the construction of wills, the cases are quite numerous. It has been truly said, "there is no end of citing cases upon this general question." And while there is to be found, among the vast number of cases, some real and apparent conflict, yet the greater number of them are in general accord.

In *Cheney's Case*, 5 Coke, it was said by Lord COKE that, "in a devise of land by writing, an averment out of the will should not be received. For a will concerning land ought to be in writing, and not by any averment of the same; otherwise it were great inconvenience that not any may know by the written words of the will what construction to make, if it might be controlled by collateral averment out of the will." In Redfield on Wills (3d ed.), vol. 1, pp. 497, 498, the author says: "This contains, in brief, the substance of the rule, and the reason for it. The same rule is almost universally recognized in the English courts, from the earliest times forward."

In *Newburgh* v. *Newburgh*, 5 Mad. Ch. 223, the earl of Newburgh having estates in the counties of *Sussex, Gloucester* and elsewhere, gave instructions to his solicitor to prepare a will, which *inter alia* was to give to his wife, the countess of Newburgh, an estate for life in his estates in the counties of Sussex and Gloucester. The solicitor prepared a will accordingly, and the same was afterward laid before an eminent conveyancer to settle. By some accident the word " *Gloucester* " was left out by the conveyancer, and the person who made the fair copy changed the word " counties " into " county," and the will, as copied, omitted, therefore, altogether the estate for life to the countess dowager in the county of " Gloucester."

At the time Lord Newburgh executed the will the solicitor who attended the execution had with him the abstract of the will as originally prepared, and the will was not itself read, but this abstract, which gave a life estate to lady Newburgh

as well in " Gloucester " as in " Sussex," and the testator exe-
cuted the will believing it followed the abstract. A bill was
filed by the countess dowager to rectify the mistake and that
the trusts of the will be executed with such correction.

The vice-chancellor refused to correct the mistake, holding
that the court could not set up the intention of the testator
which, by mistake, he had been prevented from carrying into
execution, as if he had actually executed that intention in the
forms prescribed by the statute of frauds. " To assume such
a jurisdiction," says the vice-chancellor, " would, in effect, be
to repeal the statute of frauds in all cases where a devisor
failed to comply with the statute by mistake or accident, and
to operate this repeal, by admitting parol evidence of the in-
tention of the devisor, which it was the very object of the
statute to avoid."

In *Langston* v. *Langston*, 8 Bligh. (N. S.) 167, the alleged
mistake in the will was by the omission of a line in copying,
and it was held that parol evidence of such mistake was wholly
inadmissible.

These cases and others are cited by Judge REDFIELD in sup-
port of the statement in the text of his work on wills, that,
" it seems perfectly agreed that parol evidence is not admissi-
ble to supply any omission or defect in a will, which may have
occurred through mistake or inadvertence." See Redf. on
Wills, vol. 1, p. 497, § 5 (3d ed). The same doctrine is also stated
in 1 Story's Eq. Jur., § 179, in these words : " Parol evidence
or evidence *dehors* the will is not admissible to vary or con-
trol the terms of the will, although it is admissible to remove
a latent ambiguity." See cases there cited in note 2, to that
section.

In *Hiscocks* v. *Hiscocks*, 5 Mees. & Wels. 362, the testa-
tor devised lands to his son John H., for life; and on his
decease to the testator's grandson John H., eldest son of said
John H., for life ; and on his death to the first son of the body
of his said grandson John H., in tale-male, with other remain-
ders over. At the time of making the will, the testator's son
John H. had been twice married; by his first wife he had

one son Simon; by his second wife an eldest son John, and other younger children, sons and daughters. After a review of the earlier cases the court held that evidence of the instructions given by the testator for his will and of his declarations, was not admissible to show which of these two grandsons was intended by the description in the will; and it was suggested whether the devise was not void for uncertainty. The court in that case approve the rule as stated by TINDAL, C. J., in *Miller* v. *Travers*, 8 Bing. 244, that, "in all cases where a difficulty arises in applying the *words* of a will or deed to a devise or grant, the difficulty or ambiguity which is introduced by the admission of extrinsic evidence may be rebutted or removed by the production of further evidence on the same subject, calculated to explain what was the estate or subject-matter really intended to be granted or devised." See, also, *Gords* v. *Needs*, 2 Mees. & Wels. 129.

In *Watson's Lessee* v. *White*, 5 Md. 297, the testator, by one clause of his will, devised " all my land which lies on the south side of the country road leading to, etc., called 'Parsons Outlet,' or by whatsoever name or names the same may be known or called, except so much of said land as lies on the south side of ' Beaver Dam Branch;' " and by another clause he devised, " All the lands I own on the south side of Beaver Dam Branch," etc. It was held that extrinsic evidence was admissible to show the location of the land and of the branch, but not to show what was the *intention* of the testator in the use of the words, "Beaver Dam Branch;" that where a given subject is devised and there are two pieces of property, the one technically and precisely corresponding to the description in the devise, and the other not so completely answering thereto, the latter will be excluded, and that where the language of the will is plain and unambiguous it must govern, and no extrinsic evidence is admissible to show that the testator *meant* something different from what his language imports.

In *Judy* v. *Williams*, 2 Ind. 449, the plaintiff claimed as a devisee under a will made by one John F. Judy. The testator, after bequeathing a lot of land to a grandson, and certain

bonds and accounts to his son Isaac, devised all the *rest and residue* of his real and personal property, " to all the rest of my children, to be equally divided amongst them, namely: Mary, Drusilla, Deborah, John, Ann and Reason." It appeared that two of the devisees, viz. : Drusilla and John, died several years before the testator, leaving issue; and the defendants were permitted in the court below to prove certain conversations of the testator after the death of Drusilla and John, to show that the testator's intention, in naming them in his will, was to devise the legacies there devised in their names to their children. It was held that proof, that by a devise to a parent the testator *meant* a devise to the children of such parent, even although the parent was known to the testator to be dead at the time the will was made, was inadmissible.

It was there said that " courts will always endeavor to give effect to the intention of the testator, if possible ; but that inten tion must in some way be manifested in the will itself. It cannot be gathered wholly *dehors* the will." And it was further held to be necessary that every one claiming·in the character of a devisee should answer the description which the devisor has given him in the will.

In *Mann* v. *Executors of Mann*, 1 Johns. Ch. 231, Chancellor KENT states the question before the court to be, " whether under the bequest of ' all the rest, residue and remainder of the *moneys* belonging to my estate at the time of my decease,' the widow is entitled to any thing more than the cash which the testator left at his death ; or whether, as the defendants have contended, she be entitled also to the bonds, mortgages, and notes." And, " This question," says the chancellor, " has led to another, and that is, whether the parol evidence offered be admissible to explain the testator's meaning?"

" It is a well-settled rule of law," he says, " that seems not to stand in need of much proof or illustration, for it runs through all the books from *Cheney's Case*, 5 Coke, 68, down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the inten-

tion of the testator, except in two specified cases : First, when there is a latent ambiguity arising dehors the will, as to the person or subject meant to be described; and second, to rebut a resulting trust. All the cases profess to proceed on one or the other of these grounds." See case cited in opinion of the chancellor.

The chancellor says further that, "perhaps a solitary dictum may occasionally be met with (for there are volumes of cases on the subject of wills), in favor of the admission of parol proof to explain an ambiguity or uncertainty appearing on the face of the will, though Lord THURLOW says there is no such case. If there be, we may venture to say it is no authority. If a will be uncertain or unintelligible on its face, it is as if no will had been made." It was held in that case that parol evidence was not competent to show that by the term "moneys" the testator intended to include bonds, mortgages and notes, or any thing more than "cash," that being the import of the word used.

In *Skipworth* v. *Cabell's Ex's*, 19 Gratt. (Va.) 758, it was held that parol evidence was not admissible to show the views or opinions of the testatrix, in order to show that she acted under a mistake in the revocation of certain clauses in her will.

To quote further from Chancellor KENT in *Mann* v. *Mann*, *supra:* "If there be a mistake in the name of the legatee, or there be two legatees of the same name, or if the testator bequeath a particular chattel, or there be two or more of the same description, or if, from any other mis-description of the estate or of the person, there arises a latent ambiguity, it may, and must be explained by parol proof or the will would fall to the ground for uncertainty. When a latent ambiguity is produced, according to the language of the courts (Lord THURLOW in 1 Ves. Jr. 259, 260, 415, and Lord KENYON in 7 Term R. 148), in the only way in which it can be produced, viz., by parol proof, it must be dissolved in the same way ; and there is no case for admitting parol evidence to show the intention upon a patent ambiguity on the face of the will.

They are all cases of latent ambiguity. * * * And if collateral averments be admitted, to use the words of Sir MATHEW HALE in *Fry and wife* v. *Porter*, 1 Mod. 310, how can there be any certainty? a will may be any thing, every thing, nothing. The statute appointed the will to be in writing, to make a certainty, and shall we admit collateral averments and proofs and make it utterly uncertain. In a still later case, 3 P. Wms. 354, Lord TALBOT observed that if we admit parol proof, then the witnesses, and not the testator would make the will; and he spoke with equal decision in the case of *Brown* v. *Selwyn*, Cases Temp. Talbot, 240, though the parol proof, in that case, would have left no doubt of the intention of the testator being contrary to the legal operation of the will. This "case," says the chancellor, "comes with the more weight, since the decree was affirmed in the house of lords (4 Bro. P. C. 179), who would not suffer the parol evidence to be read, nor even the answer as to that matter."

In *Humphreys* v. *Roberts*, 5 Barn.' & Ald. 507, A, by his will, devised all his messuage or dwelling-house, with the appurtenances, in High street in the town of H. and all and every his buildings and hereditaments in the same street to his mother for life, and after her death to C. D. The testator had only one house in High street, but behind that house he had two cottages fronting a lane called Bakehouse lane; there was no thoroughfare through that lane, the only entrance into it being from High street. It was held that the description of the will could only be satisfied by holding that the cottages passed by the will.

In *Pritchard* v. *Hicks*, 1 Johns. Ch. 270, it was held that where the subject of the devise or legacy is described with reference to some extrinsic fact, extrinsic evidence may be resorted to to ascertain that fact; and where the *words* of the will are equally applicable to two persons or two things, parol evidence is admissible to show which person or thing was intended.

In *Connelly* v. *Pardon*, 1 Johns. Ch. 291, the will, after seve

ral legacies, devised as follows: " *Thirdly*, I bequeath to my brother Cormac Connolly, and to my two sisters, Mary and Ann, whatever remains of my money, after the above bequests, to be divided between them share and share alike; and in case of the demise of either of them, to share and share alike to the survivor or survivors." On the following day he made a codicil to his will, and among other bequests made the following: " To my nephew Cormac Connolly, the son of my brother Cormac Connolly, the sum of $500 for his ecclesiastical education, which sum is to be taken from what I have bequeathed to my brother Cormac and to my sisters Mary and Ann." The testator had no brother named Cormac, but he had a nephew Cormac, son of his brother James, who, at the time of making the will, was pursuing classical studies in Ireland with a view to an ecclesiastical education, and he was the only nephew of that name. The only brother or sisters of the testator who survived him or left issue were the complainant, James Connolly and the two sisters named in the will, unless another brother Henry, who left the family residence in Ireland unmarried thirty years since, and who had not been heard of by the family for many years, was then living. Upon these *facts* the chancellor was of opinion that there could be no doubt that the bequest was intended for James Connolly, miscalled Cormac in the will.

In *Winkley* v. *Kaime*, 32 N. H. 268, where the testator devised " thirty-six acres, more or less, in lot 37, in the second division in Barnstead, being the same I purchased of John Peavey," and there was no such lot as 37 in the second division, but there was a lot 97 in that division, a part of which the testator had purchased of John Peavey, and of which he died seized, it was held that the words 'in lot 37' might be rejected as a false description, and the lot 97 pass by the devise," the principle being that if there is a sufficient description of the land devised, independent of the erroneous description, the will will take effect." See cases there cited on p. 274.

In *Lessee of Allen* v. *Lyons*, 2 Wash. C. C. 475, the

language of the will was that the testator devised his lot on *Third* street (Philadelphia), in the possession of R. H., to his daughter. It appeared that he had no lot on *Third* street, but that he had one on *Fourth* street which was in possession of R. H. The court held this to be a latent ambiguity that could be explained by parol evidence of extrinsic *facts*, and directed the jury, if they were satisfied that the lot in Fourth street was the one intended, they should find for the plaintiff as to this point in the case.

The following are also cases of latent ambiguities where extrinsic evidence was admitted to show the application of the language of the will to the property devised, or to the person intended as the devisee : *Townsend* v. *Downer*, 23 Vt. 225 ; *Button* v. *American Tract Society*, id. 336; *Roman Catholic Asylum* v. *Emmons*, 3 Brad. Sur. 144; *Myers* v. *Rigg*, 20 Mo.; *In re Gregory*, 11 Jur. (N. S.) 634.

These cases, and many more that could be cited, proceed upon the doctrine that where a latent ambiguity is discovered, evidence of extrinsic *facts* may be admitted in aid of the exposition of the will; to determine whether the *words of the will*, with reference to the facts, admit of a plain application, and if not, then to determine whether the *words* can be applied in any other sense of which they are capable, so as to satisfy the intention of the testator. In all the cases coming within the scope of our investigation of this question, where extrinsic evidence has been admitted to remove a latent ambiguity, the language of the will, after rejecting the false description, has been sufficient to show *what property* or *what person* was intended by the testator. As in *Winkley* v. *Kaime*, *supra*, the " lot 37 " being rejected as false, because there was no such lot, there remained a sufficient description by the words of the will to make it clear what lot was intended. The devisee described the property as " thirty-six acres more or less in second division of Barnstead, ' *being the same I purchased of John Peavey*.' " This description, with the aid of the extrinsic evidence showing that the testator had purchased of John Peavey a part of lot 97, in the second division of

Barnstead, of which he died seized, and that there was no lot 37 in the second division, rendered the intention of the testator certain in respect to the property devised. The same is true of *Allen* v. *Lyons, supra*, and of every case we have seen. If there is no person or no property corresponding to the description *in all particulars*, but there is one corresponding in many particulars, and no other that can be intended, the false description will be rejected, and the property corresponding to the description in other particulars is held to pass, or the person thus answering the description will take under the will. But we have seen no case where other words than the words of the devise have been allowed to be imported into the will in order to describe a devisee, or to identify property to which the words of description in the will did not apply, upon the principle above cited. And when, by rejecting the false description, the remaining words do not describe the property or person to any extent, parol proof to show the testator's intention is inadmissible.

In *Jackson* v. *Van Vechten*, 11 Johns. 201, the testator devised as follows: " I give and bequeath to my beloved wife for and during her widowhood, *the farm which I now occupy*, together with the whole of the crops of every description, which may be thereon at the time of my death," etc.

The farm in question was at the time the will was made, and also at the death of the testator, in the possession of one Salisbury, under a lease for years. It was held that " the maxim *falsa demonstratio* cannot be held in this case ; that by rejecting the words, " which I now occupy," the will would stand thus: " *I devise and bequeath unto my said wife during the widowhood the farm*," and this, the court said, " would be senseless and unintelligible. Had the devise been of *my farm at* Watervliet, which I now occupy, there would have been some color for the application of the rule ; for then by striking out what is called false description, there would still be some certainty left," in the words, " my farm at Watervliet." It was held, therefore, that parol evidence of the instructions given by the testator to the attorney who

Fitzpatrick v. Fitzpatrick.

drew the will, was not admissible to show that the words, "which I now occupy," had been inserted in the will by mistake.

In all cases of this kind where there is no sufficient description in the will independent of that which is false, the devise fails for uncertainty. See *Hiscocks* v. *Hiscocks, supra*.

When we come to apply the principles settled by the cases above cited to the case before us, it is manifest that the devise in the will of Ellen Fitzpatrick, under which plaintiff claims, cannot be aided by averment and extrinsic evidence of the testator's intention. It is alleged to be a case of mistake in the writing of the will, whereby a certain tract of land is described that did not belong to the testator, nor did she claim at any time to have an interest in the land described in the will. The description in the will is complete and perfect, describing a tract of land which answers perfectly the description. We are asked to disregard this description and hear parol evidence to show that the testator intended to describe another and different tract of land. Not that she intended another piece of land *by the use* of the words of the devise, but that she intended to use different words of description, and that through the mistake of the person writing the will, the words intended were not inserted, but other and different language was used. If the false description be rejected there are then no words left in the will to describe the premises claimed under it. If the testator had, in addition to the words of description used in the devise, also used further words of description, such as "*my* land in the possession of A," or "the land I purchased of B," or "which I purchased of the United States at the land office in Dubuque," or "which I entered with a military land warrant," or any other such designation, then the case would fall within the principle of the adjudicated cases on the subject, some of which we have cited. After rejecting the false description, there would remain enough of the descriptive words of the will to show what property the testator intended to devise. But the description is single, with nothing left after rejecting that which is erroneous.

The will describes "That tract of land situated in Table Mound Township, Dubuque county, Iowa, described as follows: the west half of the north-east quarter of section 23, in Table Mound Township, Dubuque county, Iowa." Now, how can this description be made to apply to the "East half of the south-west quarter of section 23, township 88 north, of range 2 east, of the 5th P. M. ?" It is admitted that the former description does not apply to the land last described, and we are asked first to allow evidence of the intention of the testator as declared by her to the person who wrote the will; and second, to presume that the testator intended to devise land of which she was the owner, and not that to which she had no title, or in which she had no interest." The cases, as we have seen, are abundant to the effect that extrinsic evidence of the testator's declared intentions cannot be admitted to correct a mistake in writing the will. And we have found no case which will justify a court in presuming, upon the mere fact of a bequest, that the testator intended to assert his ownership of the thing bequeathed, and that such assertion should be considered as implied and taken as part of the description of the property devised. The case of *Hiscocks* v. *Hiscocks*, *supra*, and *Miller* v. *Travers*, *supra*, rest on doctrine directly opposedto this view. There the testator devised real estate in the county of "Limerick," where he owned none, and the court refused to admit evidence that he intended to devise his lands in the county of Clare to which he had title. *Miller* v. *Travers*, 8 Bing. 244. This case is directly in point, for if parol evidence may be admitted to show that by the words "west half of the north-east quarter," lands which she did not own, the testatrix intended to devise the "east half of the south-west quarter," which she did own, upon the same principle a devise of land in the county of "Limerick" could be shown to be intended to apply to lands in the county of Clare. But the court decided otherwise.

We find a case exactly similar to the one before us, which has been recently * decided by the supreme court of Illinois. *Kurtz* v. *Hibner*, 55 Ill. 514. The mistake there was that

the land was described as in " section thirty-two " instead of " section thirty-three." In the former section the testator did not own land. It was held that parol evidence was not admissible to show that the testator intended to devise land in a different section than that mentioned in the will, and that the draftsman of the will by mistake inserted the wrong numbers. That is precisely what the plaintiff seeks to do in this case.

In addition to cases already cited, see *Crocker* v. *Crocker*, 11 Pick. 252; *McAlester* v. *Butterfield*, 31 Ind. 25 ; *Jackson* v. *Sill*, 11 Johns. 212 ; *Jackson* v. *Wilkinson*, 17 id. 146 ; *Lippen* v. *Eldred*, 2 Barb. 130 ; *McClure* v. *Beavans*, 29 Beav. 422. See, also, 1 Story's Eq. Jur., §§ 179, 180, 181, and cases cited in notes; 1 Redf. on Wills (3d ed.), 479–507, and cases cited; 1 Greenl. on Ev., §§ 289, 290.

The judgment of the district court will be

Affirmed.

---

*This case of *Kurtz* v. *Hibner* was elaborately reviewed and severely criticised by Judge REDFIELD in an editorial article in the February number, 1871, of the American Law Register, in which he pronounces the decision as " fatally and flagrantly erroneous." This article is ably replied to by Judge CATON in the October number, 1872, Am. Law Reg., and is also reviewed by Julius Rosenthal, Esq., of the Chicago bar, in the Chicago Legal News, of date March 18, 1871, in both of which the correctness of the decision is fully vindicated.