MINNIE B. PRING et al., Appellants, v. LIZZIE S. SWARM et al., Appellees.

**WILLS:** Construction—Ambiguous Will—Parol Evidence. Parol
1   evidence may be received upon the construction of an ambiguous will, in so far as is necessary to apply the language of the will to the object or thing which testator had in mind and intended when he made the devise.

PRINCIPLE APPLIED: Testator, at the time of the execution of his will, and at the time of his death, owned three town lots, four tracts of land in Sec. 6, Twp. 81, Range 21, and one tract in Sec. 1, Twp. 81, Range 22. Subject to a life estate to the wife in all the property, he devised to his seven children as follows:

To one, the three town lots.

To another, a tract in 6-81-21, subject to a charge of $250 in favor of a son, John.

To another, a tract in 6-81-21.

To another, the tract owned by testator in 1-81-22, subject to a charge of $350 in favor of John.

To another, a tract in 6-81-22 *which testator never owned*, subject to a charge of $100 in favor of John.

To another, a tract in 6-81-22 *which testator never owned*, subject to a charge of $100 in favor of John.

If the two latter descriptions had read "Range 21," they would have covered land that testator did then own and continued to own up to his death. Three years later, testator, by a codicil, increased John's legacy to $1,800, and also increased the aforesaid charges to cover the increase. *Held*, parol evidence was admissible to show that, when testator made his will, he manifestly had in mind and intended to devise the two remaining tracts owned by him in 6-81-21.

**DEEDS: Subsequently Acquired Title—Grantor's Interest in Other Lands—Inurement to Grantee.** Where a quitclaim deed to real estate, or a valid contract therefor, purports, and is intended, to convey a greater interest than the grantor was at the time possessed of, the interest of the grantor in lands *other than the lands conveyed by said deed* may inure to the benefit of the grantee when necessary to protect grantee from a partial failure of the title intended to be conveyed by said deed. (See Sec. 2915, Code, 1897.)

PRINCIPLE APPLIED: A testator devised to his wife, in lieu of dower, a life estate in eight tracts of land, and, subject thereto, devised the fee in these tracts to six sons and daughters, with a legacy to a seventh child charged to certain devises. One daughter received three town lots, subject only to the mother's life estate. This daughter, assuming that she was the owner of the fee in the said lots, contracted for full value to convey said lots by quitclaim deed, subject to her mother's life estate, and released to her vendee ''all her interest in all real estate devised'' under her father's will. Before the daughter executed her deed, the mother died intestate, and, in partition proceedings, the court held that the mother had *not* elected to take under the will, and consequently died seized of one third of all the eight tracts. It followed that the daughter could convey to her vendee only a two-thirds plus a one-twenty-first interest in said lots. *Held*, the one-twenty-first interest of the daughter in *all* the tracts of land subsequently acquired through her intestate mother inured to the benefit of the purchaser from the daughter.

**DESCENT AND DISTRIBUTION: Surviving Spouse—Election Between Will and Distributive Share—Evidence.** Evidence reviewed, and held to support the findings of the trial court that a widow had not elected to accept the provisions of a will in lieu of her distributive share.

**WILLS: Distributive Share of Spouse—Election.** An election to accept the provisions of a will in lieu of distributive share is not shown by the mere fact that a surviving widow received the rents for one year accruing from the premises in which her husband had devised her a life estate in lieu of her distributive share, together with statements by her, on one or more occasions, that she was willing to accept that which her husband had devised to her.

**TENDER: Maintenance of Tender—Interest.** Interest follows a failure to maintain a tender.

**PLEADING: Matters Specially Pleaded—Tender.** Tender should be specially pleaded.

*Appeal from Story District Court.*—R. M. WRIGHT, Judge.

FRIDAY, MAY 5, 1916.

THE opinion sufficiently states the case.—*Affirmed.*

*I. W. Douglass, Edward M. McCall,* and *Harry Langland,* for appellants.

*E. H. Addison* and *E. R. Vasey,* for appellees.

WEAVER, J.—Thomas Oxley died testate, October 23, 1910, seized of certain real estate, consisting of three lots in the town of Maxwell, Story County, four other tracts in Section 6 of Township 81, Range 21, in Jasper County, and one other tract in Section 1 of Township 81, Range 22, in Polk County. The testator left surviving him his wife, Mary C. Oxley, and children as follows: Lizzie S. Swarm, Minnie B. Pring, Ada J. Byers, James T. Oxley, Mary A. Sperlin, John W. Oxley, and Ida M. Kulow, his only heirs at law and next of kin. By the terms of the will as originally drawn, under date of May 17, 1907, the testator devised all his real estate to his wife for life, the same to be "in lieu of her dower rights." Subject to the devise to the wife, he further devised to Minnie B. Pring the three lots in Maxwell; to Lizzie Swarm, a properly described tract in Section 6, Township 81, Range 21; to Ida Kulow, another properly described tract in Section 6, Township 81, Range 21; and to Mary A. Sperlin, a properly described tract of 76½ acres in Section 1, Township 81, Range 22. By the same instrument, he devised to Ada J. Byers a tract of land described as the south 46.85 acres of the west half of the northwest quarter of Section 6, Township 81, Range 22, and to James T. Oxley, the north half of the southwest quarter of Section 6, Township 81, Range 22. Instead of any devise of land to the son John W. Oxley, the testator provided for him a legacy of $800, to be made a charge as follows: $250 upon the land given to Mrs. Swarm, $100 upon the land given

to Ada J. Byers, $100 upon the land given to James T. Oxley, and $350 upon the land given to Mrs. Sperlin. It is conceded to be a fact that at no time during his lifetime did the testator own or have any interest in the tracts of land described in the devises to James T. Oxley and Ada J. Byers as being in Township 81, Range 22; but he did, at the date of the will and thence to his death, own other tracts, in all other respects similarly described, except that they were located in Township 81, Range 21, instead of Township 81, Range 22. On May 24, 1910, the testator executed a codicil to his will, increasing the legacy to John W. Oxley, making the aggregate amount thereof $1,800, chargeable $400 upon the share of Mrs. Swarm, $300 upon the share of Mrs. Byers, $400 upon the share of James T. Oxley, and $700 upon the share of Mrs. Sperlin. The foregoing will and codicil were duly admitted to probate.

The widow, Mary C. Oxley, died intestate, January 31, 1913. She had never made any election in open court or filed a written election to take under the will of her husband, nor had notice ever been served upon her requiring such election. The testimony as to what was done in the matter of settling the estate of Thomas Oxley is very meager, and we find nothing to indicate that such settlement had been completed when the widow died. There is evidence that the executor (who is not a member of the family) had made an annual report, filed some four months before the widow's death, but its contents are not shown, and we may presume that it would show nothing of material value for our consideration in this case. It is shown that the executor, either by consent of the parties in interest or upon the assumption that such was his duty under the trust imposed upon him in that capacity, leased the land, or some of it, for the year following the death of the testator, and, upon collecting the rent, paid it over to the widow. He appears, however, to have taken her receipt therefor to himself as executor, and presumably made account thereof in his reports. As a witness, the executor says that, in conversation with the widow, soon after the death of her husband, he

informed her that she was not bound by the will and that,
if she objected to it, she could take her legal distributive
share; but she answered, in substance, that the will was the
way her husband wanted it and she would accept it, or words
to that effect. He further testifies that, about a year later,
she asked him if she could still demand her legal share of the
estate, and that he, having first asked advice of counsel, told
her that by taking the rent she had estopped herself from the
right to now make such election. On January 27, 1913, a few
days before the death of the widow, the daughter, Mrs. Pring,
and the son, James T. Oxley, entered into a written contract,
by which the former agreed to sell and convey to the latter
the three Maxwell lots devised to her by the will of her father
"for the sum of $1,500 and one promissory note, dated March
1, 1912, given by James T. Oxley to Mary C. Oxley, to be
endorsed and assigned by Mary C. Oxley to Minnie B. Pring,
payable as hereinafter mentioned." This stipulation is fol-
lowed by further statement of the agreement of J. T. Oxley
to make payment of $600 by the delivery to Mrs. Pring of
the note held by their mother, and the further sum of $1,500
on May 1, 1913. Following this are other stipulations, as
follows:

"Party of the first part (Mrs. Pring) also agrees to
release all interest in all real estate devised under the will of
Thomas Oxley, deceased. . . . This conveyance is made
subject to the life estate of Mary C. Oxley given her by the
will of Thomas Oxley, deceased. And it is further agreed that
the State Bank of Maxwell shall be the place of settlement
where all payments and tenders of payments shall be made."

It seems to be conceded on the trial that the value of the
Maxwell lots was not materially more than $1,500, and that
the incorporation of the matter of the note for $600 into the
contract was simply to secure the influence of J. T. Oxley in
inducing the mother, to whom it had been given, to make a
present of the note to Mrs. Pring; and, as we understand the
record, he did obtain the note, duly endorsed, from his mother,

and delivered it to his sister, or left it at the bank with the contract for her benefit.

Soon after the mother's death, the plaintiffs, relying on the theory that Thomas Oxley had died intestate as to the two tracts of land which were incorrectly described in the will, and that Mary C. Oxley, not having elected to take under her husband's will, died seized of a one-third interest in all the real estate of her husband, and that such interest descended in equal shares to her children, began this action in partition to have their several alleged shares confirmed and set apart to them. The testimony on the trial tended to show the facts as we have stated them. Indeed, there is very little dispute as to any material fact, the controversy being wholly upon the law by which the rights of the parties are to be determined.

The trial court found and decreed: (1) That the will, when construed in the light of the proved circumstances, shows conclusively the testator's intent to devise the lands he actually owned, and not lands in which he had no interest whatever, and that, the description being in all other respects perfect, the error in the number of the range of townships will not be allowed to defeat that intent. (2) That the widow did not elect to accept the provision made for her in the will in lieu of her statutory rights, and therefore became vested with a one-third interest in all the real estate, which interest, upon her death, descended to her children, each thereby inheriting the one-seventh of the one-third, or the one-twenty-first part of said land; but that the one-twenty-first part inherited by Minnie B. Pring in all the lands inured to the benefit of J. T. Oxley, by reason of the contract between said parties, to which reference has been made. It appearing, however, that James T. Oxley, Mary A. Sperlin, Ada J. Byers, Lizzie Swarm and Ida M. Kulow had interchanged quitclaim conveyances releasing whatever of right or title each may have acquired through their mother in the lands devised to the grantees by their father, such conveyances were recognized

and given effect, and the shares of the respective parties to the suit in all the lands of which Thomas Oxley died seized were established and confirmed in the proportions already indicated, subject, however, to the lien of Minnie B. Pring on the Maxwell lots for the amount owed to her by James T. Oxley, and subject also to the lien of the bequests to John W. Oxley which were, by the will of the father, charged upon the lands devised to the other beneficiaries. (3) That the charges made by the will of Thomas Oxley in favor of John W. Oxley upon the several tracts of real estate devised to his other children were not subject to abatement or diminution because of the failure of the wife to take under the will and the consequent failure of each devise to vest title in the devisee to more than two thirds of the land described. Said charges were therefore established and confirmed without diminution as liens upon the diminished interests which actually vested in the devisees under the will. Partition was decreed upon the basis above indicated, and, actual division of the land being found impracticable, sale was ordered, as provided by statute. Both parties have appealed, but the plaintiffs, being the first to perfect their appeal, alone are designated as appellants in the record.

The plaintiffs complain of the decree on the following grounds:

I. It is argued that the court was not authorized to consider parol or extrinsic evidence in aid of the construction of the will, and that the lands claimed by Ada J. Byers and James T. Oxley, in Section 6, Township 81, Range 21, should have been held to be intestate property. In support of this claim, principal reliance is placed on the case of *Fitzpatrick v. Fitzpatrick*, 36 Iowa 674. The substance of that holding is that equity will not undertake to reform a will upon parol evidence, a proposition of law which may be accepted without depriving the court of authority to hear and consider parol evidence upon the construction of a will.

1. WILLS: construction: ambiguous will: parol evidence.

*Chambers v. Watson,* 56 Iowa 676, 678. In that case, while re-affirming the ruling of the *Fitzpatrick* case, the court distinctly suggests that if, instead of attempting to reform the will, the party attacking it had offered oral evidence of facts and circumstances tending to show what property the testator had in mind, the will might have been held sufficient to pass the title. In this connection, the court says:

"It is always competent to supplement the language of the will by parol evidence so far as is necessary to apply the language of the will to the object or person intended."

That doctrine has often been recognized and applied to the elucidation of wills in which the description of property devised is as faulty and misleading as in the will now before us. See *Chambers v. Watson,* 60 Iowa 339; *Whitehouse v. Whitehouse,* 136 Iowa 165; *Stewart v. Stewart,* 96 Iowa 620; *Eckford v. Eckford,* 91 Iowa 54; *Flynn v. Holman,* 119 Iowa 731, 736; *Patch v. White,* 117 U. S. 210.

It is to be admitted that the precedents are not all in accord. on this question, and that substantially the same devise which some courts have found fatally defective for want of proper description of the property has, in other cases and by other courts, been sustained by the aid of oral evidence. We shall not undertake to harmonize them. It is a matter of common knowledge among lawyers that the law of wills was at one time burdened with rules technical to the verge of absurdity, rendering it often possible to defeat the testator's intent concerning which there was no room for reasonable doubt. The extent to which some of them went is well illustrated in the citations and quotations found in the *Fitzpatrick* case, supra, and in the dissenting opinions filed in *Eckford v. Eckford,* 91 Iowa 54, 59, and *Chambers v. Watson,* 60 Iowa 339, 342. The rule announced in the *Fitzpatrick* case, that equity cannot undertake to make a will for the testator, is sound, and the court has frequently cited it favorably to that effect; but the very extended discussion of the cases found therein goes much beyond the real question there

being decided, and contains propositions to which this court has never subscribed. In both the other cases, the dissenting opinions urge with much insistence that *Fitzpatrick v. Fitzpatrick* is decisive against the validity of wills where oral evidence is required to apply the devise to the intended property; but in each case, the majority held otherwise, and since that time, the rule so approved has been applied to all cases of like character, without division of opinion. See remarks of Kinne, J., in *Eckford v. Eckford,* 91 Iowa, at 69, 70. We close this branch of the case by quoting from a Nebraska precedent what we think a fair statement of the correct principle:

"While it is true that oral evidence cannot be admitted to change the language of a . . . . will, yet the universal rule at the present time is to admit oral proof to show that one term was used for another, or that an essential term to make the definition perfect was omitted or erroneously stated." *Seebrock v. Fedawa* (Neb.), 50 N. W. 270.

II. The next and only other exception which plaintiffs take to the decree rendered below is the effect which the court gives to the contract between Minnie B. Pring and James T. Oxley. As we have already said, the court held, in substance, that, by the terms of said contract, Mrs. Pring, assuming to be the owner of the entire fee of the Maxwell lots, undertook to sell and convey the same to her brother James, and to release to him "all her interest in the real estate devised under the will of Thomas Oxley," and James, on his part, undertook and agreed to pay her a substantial price, approximating the fair value of the entire property so to be conveyed, and, said contract having been duly executed and deposited with a third party for their joint use and benefit, the subsequently acquired title which she derived through her mother, inures to the benefit of her grantee. In so deciding, we think the court did not err. At

2. DEEDS: subsequently acquired title: grantor's interest in other lands: inurement to grantee.

the date of this contract, the mother was still alive, and it is quite certain that both parties to the contract fully believed that, under the will of their father, Mrs. Pring was the owner of the entire property, and could sell and convey a good title thereto. The details of their negotiations and their conduct with reference to the contract show this in very satisfactory manner, and it would be inequitable to a marked degree to compel the grantee to pay the full agreed price and receive conveyance of a two-thirds part only. It is true that Mrs. Pring agreed to convey by a good and sufficient quitclaim deed, and, as a general rule, such sale and conveyance will not operate to pass a subsequently acquired title of the grantor or to make him liable to the grantee for any loss arising to the grantee because of an outstanding title in a third person. But it is also held that this principle is applicable only to a quitclaim deed in the strict and proper sense of that species of conveyance, and that, if the deed bears upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon such footing between the parties, then, although it may not contain covenants of title, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him with respect to the estate thus described as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance. 1 Warvelle on Vendors, Sec. 403; *Van Rensselaer v. Kearney,* 11 How. (U. S.) 297; *Hagensick v. Castor* (Neb.), 73 N. W. 932.

No deed has yet been made or delivered in this case to which we can look for light, but we have the written contract of the parties, which, read in view of all the circumstances, makes it clear, as we have said, that the parties were dealing on the basis of full ownership in the grantor and her ability

and intention to convey a good title, and this, we think, would estop her to now contend that she was selling only a mere fraction of the property.

III.   Referring next to the defendant's appeal, the first contention is that the widow should be held to have elected to take under the will.   It is conceded that Mrs. Oxley never made such election in open court, nor did she ever make or file such election in writing. Neither did the heirs nor any of them, nor any other person interested in the estate serve her with any notice calling upon her to make such election.   See Code Sections 3270, 3376. But it is argued that, after the death of the testator, the widow, on one or more occasions, expressed her willingness or purpose to accept what her husband had pro-vided for her, and that she did accept and receive rents accruing on the land of which he died seized.   We have held several times that the mere receipt of rents by a widow under such circumstances will not operate to estop her from claiming her statutory share of her husband's estate (*Byerly v. Sherman,* 126 Iowa 447; *Jones v. Jones,* 137 Iowa 382; *Thorpe v. Lyones,* 160 Iowa 415), and we find nothing in the record to take the case out of the rule so established.   Moreover, the rent in this case was for but a single year; it was collected by the executor as an asset of the estate and by him paid over to the widow; and, so far as appears, the payment and receipt were made without any claim or demand therefor on her part.   What she said in conversation as to her purpose with respect to her husband's will was not said to the other beneficiaries, nor does it appear to have been said with any intent to influence their conduct or action, and it does not appear to have done so.   No election having been made and no estoppel being established, it must be held that she died seized of her statutory share in the lands, and that, having died intestate, the prop-

3. DESCENT AND DISTRIBUTION: surviving spouse: election between will and distributive share: evidence.

4. WILLS: distributive share of spouse: election.

erty so vested in her descended to her seven children equally, as was decided by the court below.

IV. Complaint is also made that the decree below requires James T. Oxley to account for interest on the payment due from him to Mrs. Pring upon the purchase of the

**5. TENDER: maintenance of tender: interest.** Maxwell lots, but the record discloses no apparent error. It is shown that James T. executed and left his check at the bank for Mrs. Pring, to be delivered upon the making and delivery of the deed by her, and the banker says the "check was good," and "would have been paid," had Mrs. Pring appeared and

**6. PLEADING: matters specially pleaded: tender.** performed her part of the contract. This is relied upon as a tender which stops the accumulation of interest. But there is no clear showing that the tender was kept good, nor do we find a sufficient allegation of tender in the pleadings.

The amount to be paid to John W. Oxley in discharge of the legacies in his favor which were made liens upon the lands devised to others appears to have been removed from the realm of controversy by voluntary payments pending this litigation, leaving nothing in this regard for us to pass upon.

The decree below appears to be well sustained by the record, and it will therefore be affirmed. The costs of this court will be apportioned, the parties paying each their own costs.—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.