In the Matter of the ESTATE OF Gertrude C. HAMILTON, Deceased.

Upon the Application of Paul Hamilton and Leo Hamilton, Appellants,

And Concerning The Gertrude C. Hamilton Estate, Appellee.

No. 89–1604.

Court of Appeals of Iowa.

Jan. 29, 1991.

Gregg A. Buchanan, Buchanan, Dotson, Buchanan, Bibler & Buchanan, Algona, for appellants.

Eldon J. Winkel, Algona, for appellee Gertrude C. Hamilton Estate.

Leo J. Cassel, Cassel, McMahon & Courtney, Algona, for appellee Martin Hamilton.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Gertrude Hamilton died leaving a will and ten codicils. This dispute centers around the meaning of certain provisions in her will and codicils that affect the disposition of the "Murray Farm" involved in this controversy. We set forth only those parts of the codicils that are necessary to the decision. She denotes the paragraphs in her will and codicils as "Item" and we will do likewise in this opinion.

The decedent, in her 1975 will, for the most part bequeathed the Murray Farm to her nine children in equal shares. She made this bequest along with other property (that included a trust provision and an option to buy land not here involved) under Item IV of her will. In Item VI of her will, the provisions of Item IV were made subject to the right of her executors to sell any real estate owned by her without court approval and to divide the proceeds in accordance with the applicable provision of her will. Her first, second, third, fifth, sixth, and seventh codicils have no bearing on this dispute except that each codicil, including her fourth, eighth, ninth, and tenth, ratified and affirmed her will and all previous codicils.

Her fourth codicil was executed in 1978. Under Item I of that codicil, she amended Item VI of her will (the provision which gave her executors the authority to sell her real estate) by providing:

Said power of sale is hereby limited and it is my express direction that the Murray Farm be not sold but shall remain in my family for fifteen years or for whatever term of years more than fifteen [sic] are necessary to qualify this farm for the alternate method of valuation of farm land under the federal estate tax regulations.

There the matter rested until 1982. In that year Gertrude executed her eighth codicil. As it relates to the problem before us, that codicil provided:

I wish to state for the record that my primary lifetime goal has been to keep our farm land in the family and all of my decisions have been directed to that goal.

On July 8, 1983, Gertrude executed her ninth codicil. That codicil added to Item I of her fourth codicil (the article that limited the executors' right to sell) a provision at Item I that the Murray Farm be rented to one or more of the children of her son, Luke, for fifteen years or for whatever term of years, more or less than fifteen, as is necessary to qualify the farm for the alternate method valuation. There is an additional provision that provides for cash rent lease for 75% of the average cash rent

leases in Greenwood Township as determined by the Kossuth County Extension Office, if a cash rent lease under these circumstances still allows this farm to qualify for the special use valuation of farm land under the Federal estate tax regulations. The 75% provision is to be used as a fair percentage for the first two years of the lease and commencing with the third year is to be increased to 80%. If this method of computing cash rent prevents qualification for special use valuation, the usual crop share lease is to be used. Her ninth codicil also "added" the following:

## ITEM II

I hereby give a first option to my grandsons, Paul and Leo Hamilton, or any of Luke's other boys who are financially able to buy the Murray Farm at a suggested price to be determined by my co-executors as follows:

80% of the market value as determined by my co-executors from the average of the prior two years sales of farms in Greenwood Township as recorded by the Kossuth County Extension Service or the Kossuth County Recorder Office. This option period shall be exercised within nine months of my death.

We note here, as it relates to the option to purchase under her ninth codicil, that the decedent provided that the options must be exercised within nine months of her death. In her tenth and final codicil, executed in September 1983, Gertrude deleted the nine-month period from her ninth codicil and in lieu thereof provided that the option must be exercised within fifteen years of her death. She died on March 6, 1984.

In March 1988, the applicants, Paul and Leo Hamilton (the testator's grandsons) in accordance with Item II of decedent's ninth codicil, mailed a notice of exercise of option concerning the farm to Gertrude's heirs. The applicants suggested a price based on Gertrude's formula. The notice further provided that Paul and Leo would extend to their brothers an opportunity to purchase an interest in the farm.

In July 1988, Paul and Leo filed an application to reopen the estate for purposes of

addressing the issues regarding the option on the farm. Following a hearing, the district court entered its order finding the will and codicils ambiguous and inconsistent. It construed the disputed provisions to mean, inter alia, that the option could only be exercised between ten and fifteen years after the date Gertrude died. Paul and Leo have filed this appeal.

Our review is de novo. In a de novo review we make findings of fact anew; however, when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. *In re Estate of Crist*, 434 N.W.2d 904, 905 (Iowa App.1988); *In re Estate of Nagl*, 408 N.W.2d 768, 771 (Iowa App.1987).

### I.

█ It is not the function of the Court to make, remake, improve or otherwise modify the clear provisions of the will of a competent testator. *Matter of Estate of Eickholt*, 365 N.W.2d 44, 46 (Iowa App. 1985). The court is authorized to construe the true intent of a will if ambiguities exist. *Elkader Prod. Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 237 (Iowa 1977). However, it is elementary that in construing a will, the polestar is the testator's intent which, if expressed, controls. *Matter of Estate of Eickholt*, 365 N.W.2d 44, 46 (Iowa App.1985). So while the court may construe the intent of the testator if ambiguities exist, the court must also keep in mind what the testator wanted and not rewrite the will according to what the courts believe is correct.

It is alleged that an ambiguity exists between Item I of the decedent's fourth codicil which provided "that the Murray farm be not sold but shall remain in my family for fifteen years" and the provisions of her ninth and tenth codicil which specifically gave her designated grandsons (or any of Luke's other boys who are financially able) the first option to buy the Murray farm within fifteen years of her death.

Faced with this problem, the trial court concluded that the option to purchase was premature and that the land could not be sold until a time period of ten years had passed. It is here that we disagree with the trial court. In doing so, we find the decedent's ninth and tenth codicils govern and thus reverse.

█ It is axiomatic that a will and its codicil are to be read and construed together as one instrument executed on the date of the last codicil. *In re Barnes Estate*, 256 Iowa 1043, 128 N.W.2d 188, 191 (1964).

> The codicil is welded into the will and becomes an integral part of it and in determining the intent of the testator, the will and the codicil are to be read together as one instrument; and unless there is an irreconcilable conflict or discrepancy between them, the codicil is no more the last expression of the testator's intent than if it had been written as part of the will. If there is such a conflict the codicil will govern.... The codicil supplants the will only to the extent of those provisions of the will that are inconsistent with it.

*McCullough's Estate v. Conrad*, 243 Iowa 449, 458–459, 52 N.W.2d 67, 73 (1952). "The purpose of a codicil is ordinarily to effect some change in the will as drawn. When lawfully executed it becomes a part of the original will, and the two instruments stand as one testamentary disposition." *Id.*

At the time the testator wrote and properly executed the fourth codicil it became a part of her will. The same is true of her ninth and tenth codicils. Thus, the will and codicils are to be read together as one instrument. When we do so, after paraphrasing, so much of the will and codicils as is necessary for a better understanding of this dispute the following instrument results: The decedent bequeathed her real estate to her children. The executors were authorized to sell any of her real estate except the Murray farm, and it was to remain in her family for fifteen years or for whatever term of years more than fifteen as is necessary to qualify the Murray farm for the alternate method of valuation. Her primary goal was to keep the farmland in the family. In her Ninth Codicil she directed the Murray farm be rented to the

children of her son, Luke, for fifteen years or for whatever term more or less than fifteen as is necessary to qualify the farm for the alternate method valuation. Also in her Ninth Codicil she gave to the applicants here (or any of Luke's other boys who are financially able) the first option to purchase the Murray farm. Her Ninth Codicil required the option to be exercised within nine months of her death and her tenth and last codicil provided the option had to be exercised within fifteen years of her death.

The appellee contends that the decedent intended that the option to purchase was not to be exercised until the expiration of ten years. Appellee argues that this was the testator's intent for it is consistent with the tax laws on special use valuations, and, as it relates to her tenth codicil, she must have been aware of the change in the time period to qualify for special use valuation. In this regard, at the time the testator executed her tenth codicil, the time period to qualify for special use valuation had changed from fifteen years to ten years.

While the testator may have known of this change, it cannot go unnoticed that under her ninth and tenth codicils she had the opportunity to impose the suggested ten-year provision if she desired, but in each instance declined to do so. In this respect we agree that when the will and codicils are considered in their entirety the decedent, acting under tax advice, desired to minimize federal estate tax exposure.

But from the record before us we discern that the mere exercise of the option by the grandsons will not disqualify the property from the benefits of special use valuation. We are told that if the grandsons later sell the property outside the time frame of special use valuation, the grandsons may be responsible for a penalty. This may be the ultimate result, but if we are to hold that decedent acted under tax advice to minimize federal estate tax exposure, it follows that this result must have also been considered.

We believe that if we were to impose the ten-year condition on the grounds of oversight on the part of the testator, we would in effect be modifying a provision in her will which is otherwise clear and unambiguous. When we couple the will with the various codicils, we believe, as the trial court found, that by granting the grandsons the option to purchase she satisfied the requirement that the Murray farm remain in the family. Although generally grandchildren may not be construed as immediate family members, we are convinced that the testator intended, particularly in view of the great reliance placed on special use valuation, that she intended that the option bequest to her grandsons satisfied the "remain in my family" statement under item IV of her will. If indeed there is an inconsistency between item IV of her will and item II of her ninth codicil, we hold, under the circumstances here, that her ninth and tenth codicils supplant her will. *See McCullough's Estate,* 243 Iowa at 458–59, 52 N.W.2d at 67, 73 (1952).

■ The trial judge also considered the minority age of a portion of the grandchildren when he implemented the ten-year moratorium on the option. Appellee now argues that if the option was exercised immediately some of the grandchildren would be minors and unable to exercise their option. The appellee then contends that the testator must have intended to delay the effective date of the exercise of the option for ten years from the date of her death in order to avoid any potential problems insofar as minors are concerned. The appellee reaches this result after determining the children would be of majority at the end of the ten years.

When testator first created this option under her Ninth Codicil, several of Luke's children were minors and presumably either not interested in or financially unable to participate in the exercise of the option. Yet with this in mind, the testator provided for an option period of only nine months from the date of her death. Considering the testator's age, we are unable to assume she expected the nine-month period would come after all the grandchildren had reached majority. Further, if there had been no tenth codicil, it would be difficult to find merit in an argument that she intended to delay the effective date of the

option until Luke's sons attained their majority.

While the tenth codicil did extend the time period for exercise of the option, there is nothing in the record to indicate this change was done for the purpose of protecting the interests of Luke's younger sons. Factually, if the testator had died immediately after executing the tenth codicil on September 7, 1983, at least one of her qualified grandsons would still not have been of majority age after the expiration of the ten-year period. We conclude that the testator intended what her ninth and tenth codicils provided, and that is to grant an option to purchase at any time during the fifteen year time period to any of Luke's children who were financially able.

## II.

The trial court made a separate finding that the method employed by the applicants in exercising their option was proper. This was not challenged on appeal. Therefore, we affirm the trial court in this respect excepting, of course, the provision that it was premature.

## III.

■ We are compelled to address the extent of the option provision under Item II of decedent's ninth codicil. There the decedent granted "a first option to my grandsons, Paul and Leo Hamilton, or any of Luke's other boys who are financially able to buy the Murray Farm ..."

As the trial court found, the present dispute is not the first time the family members had difficulty interpreting the decedent's will and codicils. To resolve their first controversy, the interested parties entered into a settlement agreement dated October 12, 1984. Paragraph 2 of the settlement agreement provides in part that following the 1985 crop year, the Murray farm "... will be rented to Paul Hamilton, as agent for the male children of Luke Hamilton on a 50–50 crop share basis ... for a term ending March 1, 1999, unless previously terminated by exercise of the option to purchase under the Ninth and Tenth Codicils to the Will or by mutual consent."

Paragraph 3 of the settlement agreement states that the other beneficiaries of Gertrude will not contest the option given to the male children of Luke Hamilton in the ninth and tenth codicils to Gertrude's will, and ambiguities, if any, in the terms of the option shall be resolved by a judge of the district court of Kossuth County.

■ We agree with the appellee that provisions must be made concerning the rights of the male children of Luke who were not named parties exercising the option. On the record before us, at the time the option was exercised only Paul and Leo were named. There are six other children who may have an interest that needs protecting. This is especially true of those children that are yet minors.

We note the trial court artfully presented guidelines for the protection of those who are not parties to the notice of exercise of option. We leave it to the trial court to determine what, if any, of those guidelines should be implemented in view of our decision announced this day.

We accordingly remand this cause to the district court for the purpose of additional hearings and orders establishing the rights, if any, of Luke's other children. We do not retain jurisdiction. The rights of appeal therefrom are preserved for all interested parties.

## IV.

Finally, we agree with the trial court's method of calculating the valuation of the farmland. This question was exhaustively covered during the course of the trial. The interested parties submitted competing evidence as to valuation. The trial court considered all necessary factors in reaching its decision. The appellant does not seriously challenge the result, and the appellee does not cross-appeal. We affirm on this issue.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

HAYDEN, P.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part and dissenting in part).

The estate elected special use and installment payments. The trial court arrived at a result that assured continuation of the qualification for special use and installment payments of federal estate tax. Additionally and most importantly, the trial court's decision protects the interests of the minor sons of Luke by not allowing the option to be exercised until after they reach their majority so they will have an opportunity to participate.

The majority opinion directs that the trial court protect the rights of these minors under this decision, but they give the trial court no guidance. I do not understand how the trial court can establish the rights of the minor children under the majority's decision.

The result reached by the trial court is the more reasonable result and should be affirmed. It gives equal status to grandchildren who are now of age and those who are not.