## COVERT v. SEBERN ET AL.

1. **Will**: INTERPRETATION: PAROL TO IDENTIFY BENEFICIARY. Where the testatrix devised and bequeathed to her "step-son, *H. S.* Covert," certain property, but she had no step-son whose initials were H. S., but had a step-son named John Harvey Covert, who was usually called "Harvey," *held* that the parol evidence of the scrivener who wrote the will was admissible to show that she directed him to so write the will as to give the property in question to her "step-son, Harvey," and that he supposed that Harvey's name was H. S., and so wrote it in the will.

2. ——: ——: IRRECONCILABLE REPUGNANCY. Where there is an irreconcilable repugnancy between two clauses of a will, the last of the clauses must be enforced, as being the latest expression of the testator's intent, and the others must be disregarded. (See authorities cited in opinion.)

3. ——: ——: JURISDICTION OF PROBATE COURT. While chancery has jurisdiction of cases brought for the sole purpose of construing and interpreting wills, it is not so far exclusive as to forbid the court of probate, when called upon to direct a distribution of the property according to the terms of the will, to interpret the language of the will, in order to ascertain the purpose of the testator.

*Appeal from Pottawattamie Circuit Court.*

MONDAY, DECEMBER 19.

THE plaintiff filed his petition in the circuit court, sitting as a court of probate, praying that the executor of the estate of Catherine Covert be ordered, after the payment of certain special legacies bequeathed by the will, and all legal fees and disbursements, to deliver and pay to plaintiff, as the residuary legatee, the remaining property and money of the estate. The defendants in their answer deny that plaintiff is the residuary legatee, and aver that they are the residuary legatees. They show that the clause of the will under which plaintiff claims as legatee bequeaths the remainder of the estate to *H. S.* Covert, and that, in a prior clause, they are made the residuary legatees. The circuit court rendered an order, in effect, declaring the plaintiff and defendants all to be residuary legatees, and ordered the remainder of the estate, after

payment of specific legacies and debts, to be divided equally between plaintiff and the several defendants. Both parties appeal.

*Clinton N. Powell*, for plaintiff.

*Decmer & Junkin* and *Shaw & Kuehnle*, for defendants.

BECK, J.—I. The following is a copy of the will involved in this case: "*First.* I give and bequeath to my step-son,

**1. WILL: interpretation: parol to identify beneficiary.** H. S. Covert, all my right, title and interest in and to lots 1 and 2, in block 9, with all the improvements thereon in 'Meredith's addition' to the town of Avoca, Iowa. *Second.* After all my funeral expenses are paid, I give and bequeath to my niece, Amanda McClew, of Carroll county, Iowa, the sum of one hundred and fifty dollars. *Third.* I give and bequeath unto Leah Christiana Smock, of Benton county, in the state of Iowa, the sum of one hundred and fifty dollars. *Fourth.* The balance, residue and remainder I give and bequeath to my brothers and sisters, the same to be equally divided by and between them, Mrs. L. J. Sebern, of Crawford county, Iowa, A. V. Vanice, John N. Vanice and Elizabeth Williams, the three latter of Benton county, in the state of Iowa, except my beds and bed-clothing, and this I give and bequeath to my two dearly beloved sisters, and ask them to divide them satisfactorily by and between themselves. *Fifth.* All my household furniture, except the said beds and bed-clothing, of which I die seized I give and bequeath unto my step-son H. S. Covert. *Lastly.* I give and bequeath to my step-son H. S. Covert all the remainder and residue of my property, be it real or personal, of what character or kind whatsoever. And I hereby appoint J. G. Tipton my executor of this my last will and testament, revoking all others; he being a neighbor of mine, and a resident of the town of Avoca, in the county of Pottawattamie, and state of Iowa."

The plaintiff, it is shown without dispute, was one of four

step-sons of the testatrix. His real first name was John Harvey, and he was usually called by the testatrix " Harvey." No one of the step-sons was named or known by the name of " H. S.," nor were these letters the initials of the names of any one of them. The scrivener who wrote the will was permitted, against defendant's objection, to testify, in effect, that the testatrix, in instructing him to prepare the will, and the items thereof devising and bequeathing the property specified in the first, fifth and last items of the will, designated the beneficiary in these items as her step-son " Harvey," and directed him to prepare the will devising and bequeathing the property specified in these items to her step-son Harvey; that he supposed and believed that the initials of plaintiff's first name were " H. S.," and, so believing, wrote these initials to designate him, and that he knew the plaintiff by the name of " Harvey." This witness testifies that he was acquainted with plaintiff, and that he knows of no person whose name is *H. S.* Covert. It is not shown that any person bears that name.

II. Two questions arise in this case which require determination in order to reach a decision therein, viz: (1) Is it competent, by parol evidence, to apply the items of the will wherein H. S. Covert is the beneficiary to the plaintiff, showing thereby that the testatrix intended to will the property to him? (2) Is plaintiff the sole residuary legatee, being last-named as such, after a prior item names the defendants as the residuary legatees? In our opinion, as to the name of the beneficiary in the items designated " first," " fifth," and " lastly," there is a latent ambiguity. On the face of the will there appears no uncertainty or ambiguity; but, as the truth is that there is no living person of the name of H. S. Covert, there arises, upon that fact being made to appear, a latent ambiguity. This ambiguity must be explained, otherwise the bequests made in these items fail, and the testatrix's intentions will be defeated. But the law will uphold her intentions when they may be made suffi-

ciently certain. The law will not, by holding the items void, declare that the testatrix had no intentions, but will seek to discover her true intentions by evidence which will with certainty identify the beneficiary, and connect him with the will. The law will thus find and produce the person upon whom the testatrix intended to bestow her bounty.

It will be remembered that the intention of a testator is the polar star guiding courts in the interpretation of wills, and that it may be sought for by oral evidence identifying the beneficiaries named in the will, and, when necessary, the property bequeathed. In this case, the parol evidence certainly identifies the plaintiff as the legatee named in the first and fifth items of the will, and the residuary legatee named in the last. He is described in these items as the step-son of the testatrix. She had no step-son bearing the name written to designate plaintiff. She designated him to the scrivener as "Harvey," a part of his real name by which she usually called him, and by which he was known. It seems to us that this evidence discloses with absolute certainty the intention of the testatrix, which must be enforced by the law. We have no doubt that the parol evidence above referred to, under a familiar rule of the law, is competent. In support of these views see the following authorities: *Fitzpatrick v. Fitzpatrick*, 36 Iowa, 674; *Hawkins v. Garland's Adm'r*, 76 Va., 149, 3 Amer. Prob. Rep., 550; *Mann v. Executors of Mann*, 1 Johns. Ch., 231; *Morse v. Stearns*, 131 Mass., 389, 2 Amer. Prob. Rep., 51; *Morgan v. Burrows*, 45 Wis., 211; *Case v. Young*, 3 Minn., 209, (Gil. 140;) 1 Jarm. Wills, (5th Ed.) 429 *et seq.* and notes; *Lorieux v. Keller*, 5 Iowa, 196.

*Palmer v. Albee*, 50 Iowa, 429, cited by defendant's counsel, involved the interpretation of a contract. We understand the rules pertaining to ambiguities differ as to wills and contracts. This decision is not, therefore, applicable to the case before us. *Dunham v. Averile*, 45 Conn., 61, cited by same counsel, is a case where it was sought to contradict

the express language of a will by directing the bequest to a person other than the one named as the beneficiary. In the case before us, by a latent ambiguity, the beneficiary does not certainly appear, but is discovered by competent parol evidence. The cases are wholly unlike.

III. It will be observed that there is an irreconcilable repugnancy between the fourth and last items of the will. The 2. ——: ——: fourth declares that the defendants shall be the irreconcilable repugnancy. residuary legatees. The last, in express and direct language, makes plaintiff the residuary legatee. It is plain that these provisions are incapable of being reconciled; if one stands, the other must fall. The law provides a plain rule to be followed in such cases, which holds that the last clause, being the last expression of the testatrix's intention, must be enforced, and the other be disregarded. (1 Redf. Wills, 451; 1 Jarm. Wills, 472; *Armstrong v. Crapo*, 72 Iowa, 604; *Heidlebaugh v. Wagner*, Id., 601; *Johnson v. Mayne*, 4 Iowa, 180.) This familiar rule requires us to hold that plaintiff is the sole residuary legatee, and that the defendants can take no part of the residue of the estate under the fourth item of the will, which, so far as it provides that they shall be the residuary legatees, is superseded by the last item.

IV. Counsel for defendants argue that the language of the fourth item is such that it disposes of the promissory notes of which the testatrix died possessed, and which constitutes, with the personalty specifically bequeathed and the real estate mentioned in the first item, the whole of the estate. The inventory filed by the executor probably shows the fact that no other property of the testatrix was found by the executor,—certainly no other is reported by him. But there is not one word of evidence showing the quantity or character of the testatrix's property at the time the will was made, which was more than three years before the will was admitted to probate and the inventory filed. The date of the testatrix's death is not shown by the record,

nor do the dates of the promissory notes appear therein. We cannot presume that the property of the testator was the same when the will was made as at her death. The very foundation of counsel's argument is overthrown by these considerations.

But, did the facts as assumed by counsel appear, we do not think they would support his conclusion. The second and third items bequeath money; the fourth declares that "the balance, residue and remainder" shall go to defendants. The remainder of what? The language of the items means the balance of the money of the estate, or the balance of money realized from the assets of the estate, or the remainder of the property of the estate which shall go to defendants. Whichever of these meanings be given to it, the provision is wholly and plainly repugnant to the last item under which plaintiff claims.

V.  Counsel for defendants insist that the probate court had no jurisdiction in the case, for the reason that it is 3. ——: ——; brought for the interpretation of the will, of jurisdiction of probate court. which the court of chancery has exclusive jurisdiction. The action is brought to require the executor to distribute the property of the estate as provided for by the terms of the will. The statute clearly gives authority to the probate court to direct the payment of legacies, and to enforce its order made in that regard. (Code, §§ 2429, 2430, 2433, 2435.)

In order to determine the questions presented by plaintiff's petition, it was necessary for the probate court to interpret the will. Indeed, no order affecting the rights of the legatees, based upon the will, can be made by the probate court unless the will be interpreted so as to discover what these rights are. If the court may require, by order, the executor to distribute the property, or the money realized therefrom, to the legatees, the exercise of this power involves the interpretation of the will. Indeed, the authority to interpret the will is possessed by all courts called upon to enforce rights

under it.  While the court of chancery has jurisdiction of cases brought for the sole purpose of construing or interpreting wills, it is not so far exclusive as to forbid other courts, in which are cases involving rights under wills, to interpret their language.  After chancery, in a proper action, has put an interpretation on a will, other courts will follow it as between parties bound by the decree in the action.

VI.  The circuit court held (1) that it was competent for plaintiff to show that he was the beneficiary intended by the testatrix when she used the name H. S. Covert; but (2) that defendants and plaintiff all together should be regarded as the residuary legatees, and the remainder of the estate should be equally divided between them.  The plaintiff appeals from the decision last named, and the defendants from both.

The first decision, upon defendants' appeal, is affirmed. The second decision, on plaintiff's appeal, is reversed.  The case will be remanded to the court below for further proceedings in harmony with this opinion.