In re Estate of Charles W. Winslow, deceased.

Helen W. Sheets et al., appellants, v. Olive Enslow Calkins et al., appellees.

No. 52309.

Richard D. Morr, of Chariton, for appellants.

Killmar, Reynoldson & Harvey, of Osceola, for appellees.

SNELL, J.—This is a proceeding in probate, tried in equity pursuant to section 633.33, Code of 1966, for the construction of the will of Charles W. Winslow, deceased. The executors asked for construction of the will and directions as to distribution.

Charles W. Winslow, a widower, died testate in October, 1963. His will, executed November 30, 1959, has been admitted to probate. Testator was survived by one daughter and other legatees within varying degrees of affinity and consanguinity.

Paragraphs 1 and 2 of testator's will directed the payment of debts and the erection of a monument. The additional provisions were as follows:

"3. I will, devise and bequeath to Olive Enslow Calkins of Rock Island, Ill., the sum of $10,000.00 in cash.

"4. I will, devise and bequeath to the grand-daughter of Olive Enslow Calkins, Constance Haw of Rock Island, Ill., the sum of $5,000.00 in cash.

"5. I will, devise and bequeath to my beloved daughter, Virginia May Trombley, Garden City, California, the sum of $10,000.00 in cash.

"6. To the following named nieces and nephews, I will, devise and bequeath, to each the sum of $1,000.00 in cash:

"Helen W. Sheets, Corydon, Iowa
"Harry C. Winslow, Allerton, Iowa
"John Winslow, Long Beach, Cal.
"David Winslow, Indiana, Penna.

"Edward Winslow, Creston, Iowa

"Mrs. Kathryn Moser, Des Moines, Iowa

"Mrs. Maxine Christopherson, Spencer, Iowa

"7. All the rest and remainder over of my estate, I will, devise and bequeath to the above named legatees in the same shares as set out to each above, and if my estate is not of sufficient size, at my death to pay out all of the above set out legacies in full then I will that each of the legacies be cut proportionally.

"8. I hereby nominate Harry C. Winslow and Mardis V. Sheets to be the executors of this my last will and request that they be permitted to so act without the giving of bond."

Olive Enslow Calkins named in paragraph 3 is a sister-in-law. Mardis V. Sheets, nominated as one of the executors, is the husband of Helen W. Sheets, a niece named in paragraph 6 as a legatee.

The estate consisting entirely of personal property was valued at a little over $87,000.

The beneficiaries named in paragraph 6 of the will claim that under paragraph 7 the remainder should be distributed to them, i.e., to each 1/7 of the remainder. The beneficiaries named in paragraphs 3, 4 and 5 claim proportionate participation in the remainder.

The trial court construed the will and directed distribution of the residue of the estate after payment of all specific bequests as follows:

| | |
|---|---|
| To Olive Enslow Calkins | 10/32 |
| To Constance Haw | 5/32 |
| To Virginia May Trombley | 10/32 |
| To Helen W. Sheets | 1/32 |
| To Harry C. Winslow | 1/32 |
| To John Winslow | 1/32 |
| To David Winslow | 1/32 |
| To Edward Winslow | 1/32 |
| To Mrs. Kathryn Mosier | 1/32 |
| To Mrs. Maxine Christopherson | 1/32 |

The seven beneficiaries named in paragraph 6 appealed. We affirm.

At the trial the executors offered the will and order ad-

mitting it to probate and rested. Appellees offered the several documents showing the estate proceedings and rested.

Appellants called as witnesses and offered the testimony of Helen W. Sheets, one of the beneficiaries in paragraph 6 of the will, Mardis V. Sheets, one of the executors and husband of Helen, and Lucile M. Anderson, the scrivener who drew the will.

I. Mrs. Sheets testified as to testator's history, background and relatives. She related the frequency and extent of his visits in her home and the Harry C. Winslow home. Over timely and appropriate objections as to the competency of the witness under section 622.4, Code of Iowa (dead man statute) and the admissibility of parol evidence to vary the terms of the will the witness told of conversations and personal transactions with testator. She told how testator said he wanted to make a will and asked the witness to make an appointment with an attorney. Mrs. Sheets made the appointment. She and her husband took testator to the attorney's office. She was present and participated in the conversation. She related what was said and done. There is no suggestion of any undue influence or impropriety on her part but Mrs. Sheets was clearly incompetent as a witness under section 622.4, Code of Iowa, commonly called the dead man statute. She was a party to the proceeding and interested in the event thereof. She related conversations and transactions with the testator in which she participated. The trial court properly sustained the objections to her competency.

II. Mardis V. Sheets, over timely and appropriate objections, told of conversations and transactions with testator. He participated therein. With his wife and testator he drove to Chariton. He let them out of the car in front of the attorney's office. He parked his car, went to the office, was invited in by testator and was present thereafter. He told what was said and done preparatory to, at the time of and subsequent to the execution of the will. There is no suggestion of any impropriety on his part, but the trial court properly sustained the objections to his competency.

III. As we said in Carlson v. Bankers Trust Co., 242 Iowa 1207, 1213, 50 N.W.2d 1, "We are committed to the view section 622.4 is not to be enlarged by construction and those

whom the statute designates incompetent will be held so only as to the particular kind of testimony clearly forbidden by the statute." (Citing cases). Here, however, the witnesses attempted to testify as to what the testator said to them, what they did together, and what was said and done throughout the transaction involved in the particular issue before us. It is not a case where a silent nonparticipant relates what was overheard. Here the whole transaction is tied together. The witnesses were incompetent because the statute so provides.

Mrs. Sheets could and did testify as to testator's background, relationship, habits and activities that did not relate to conversations or the transactions involved herein, but that did not make her competent as to the issues before us.

■ IV. The scrivener who prepared the will had not previously known testator. She said testator and Mrs. Sheets came to her office. Testator wanted to make a will and instructed as to its provisions. Over timely and appropriate objections she testified as to what was said and done. "He wanted to specifically give a certain amount to three different people, and he wanted the rest of it to go to his nieces and nephews." He had names and addresses written on a little piece of paper. If there was more than enough to pay the specific bequests the rest was "to go to his nieces and nephews. * * * He also wanted me to put in there if there wasn't sufficient of the estate that all of the shares were to be cut proportionately, which I did." She testified that there was a typographical error of omission and that "one word 'last' that should have been written between the word 'above' and the word 'named' in the second line of the 7th paragraph" was omitted.

The will was typed in testator's presence, read to him as written, declared by him to be his last will and testament in the presence of two subscribing witnesses, executed in due form and then sealed in an envelope and delivered to testator. An unsealed copy was also given to testator.

The scrivener said that when the will was read after decedent's death she was surprised to discover what she called her error.

V. It should be kept in mind that this is not a will contest

nor an action to set aside the will. The will has been admitted to probate without objection. There is no claim of any such mistake as might invalidate the will. There is no claim of insufficient execution, undue influence or lack of testamentary capacity. The sole question is interpretation of the will.

The trial court carefully reviewed the problem and concluded that the intention of the testator must be gathered from the will itself without the aid of extrinsic evidence.

In Schmidt v. Claus, 250 Iowa 314, 318, 93 N.W.2d 592, there was an offer of testimony as to statements made by testator as to his understanding of the meaning of the will. We said, "The trial court properly gave this testimony no weight." (Citing cases).

In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, involved construction of a will. We said:

"It is well settled law (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain."

Our most recent pronouncement appears in In re Estate of Hogan, 259 Iowa 887, 146 N.W.2d 257. What we said there answers the problem here. We quote from pages 889, 890 of 259 Iowa, pages 258 and 259 of 146 N.W.2d:

"Of course, the governing rule in the interpretation of a will is to arrive at the intention of the testator. The complete will and all its terms must be considered. The testator's intention must be gathered from the language of the will where it is plain and unambiguous. The question is not what the testator meant to say but what he meant by what he did say. See Bankers Trust Co. v. Allen, 257 Iowa 938, 944, 135 N.W.2d 607, 610, 611, and citations; Schau v. Cecil, 257 Iowa 1296, 1299, 136 N.W.2d 515, 518; Clarken v. Brown, 258 Iowa 18, 23, 137 N.W.2d 376, 379.

"Resort to extrinsic circumstances is not permissible where the language of the will is not ambiguous or of doubtful meaning. Nor is extrinsic evidence admissible to vary, contradict or add to the terms of a will or to show an intention different from that disclosed by its language. Evidence of the testator's intention as an independent fact, divorced from the words of a will, is clearly inadmissible. Courts will not, from oral testimony, make a will the testator perhaps intended to, but in fact did not, make. Bankers Trust case, supra, and citations; In re Estate of Stonebrook, 258 Iowa 1062, 1073, 141 N.W.2d 531, 537."

In the case at bar testator spoke in writing. We may not add thereto on the basis of oral testimony as to what was said five years before the trial of this case.

VI. Was there ambiguity in the will itself? The trial court thought not and we agree.

Only by resort to oral testimony and insertion in the writing of a word or words not appearing therein can we arrive at the conclusion sought by appellants.

The testator made ten specific bequests of money in varying amounts in four consecutively numbered paragraphs. He then provided for disposition of the remainder and for proportionate reduction in event of deficiency. To give meaning to the bequest "in the same shares" and the requirement for proportionate reduction requires reference to the several specific bequests, three of which are not the same as the other seven. Nowhere did he limit the residuary bequest or the proportionate reduction to the beneficiaries named in paragraph 6. The provisions in paragraphs 3, 4, 5 and 6 preceded paragraph 7. Each was above paragraph 7. In paragraph 7 the testator bequeathed the remainder "to the above named legatees in the same shares as set out to each above." The legatees named in paragraphs 3, 4 and 5 were "above named" just as much as the ones named in paragraph 6. They were the only ones to whom the phrase "in the same shares as set out to each above" would clearly apply or have any meaning. The bequests in paragraph 6 were in equal amounts and of equal standing with each other, and as to the seven beneficiaries named therein the quoted words

1324

would have no significance if the residuary clause referred only to them. In the latter part of paragraph 7 the same pattern is provided. Testator said if his estate was not sufficient "to pay out.*all* of the above set out legacies in full then * *.* *each* of the legacies be cut" proportionately. (Emphasis added.)

Throughout paragraph 7 testator spoke of all legacies and not just those in one of the "above" paragraphs.

It may be that testator's intent was as claimed by appellants but that is not what he said in his will. As commented by the trial court he was apparently an intelligent man. He lived nearly four years after executing his will. He had a copy in his possession. There is no claim that he was unfamiliar with its provisions. During much of the time after executing his will he lived at a hotel near the office of the attorney who drew the will. If the will did not correctly express his intent he had ample time and opportunity for correction. If he did not see fit to make a change it is not for us to do so after he is dead.

Appellants' counsel has furnished us a good brief and ingenious argument distinguishing authorities but the obstacles in his pathway are too difficult to overcome.

Costs are taxed to the estate.

The case is—Affirmed.

All JUSTICES concur.