In the Matter of the ESTATE OF Mary A. EICKHOLT, Deceased.

Appeal of Martin SCHREINER.

No. 84–320.

Court of Appeals of Iowa.

Jan. 29, 1985.

J. Michael Dull of Dull, Murphy, Dull & Michaelson, Le Mars, for appellant.

W.J. Giles, III, Sioux City, for appellees Darrel Kotalik, Stanley Kotalik, and Melvin Kotalik.

Barry Thompson of Creasey, Metcalf & Thompson, Kingsley, for the estate.

Considered by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

The brother of Mary Eickholt, Martin Schreiner, challenges the court's interpretation of his sister's will in this appeal. We affirm.

The will in question was executed in 1980. Paragraph one of the will gave one-half of Eickholt's farm to her sister, Elizabeth Kotalik, and the other half to her brother, the petitioner. Paragraph two gave a certain amount of money to churches for masses, paragraph three provided that her house and household goods in Correctionville would be sold and the proceeds split equally among several of her nieces and nephews. Paragraph four gave certain powers to the executor of her estate, paragraph five appointed her brother and sister as executors, and paragraph six gave the residue of her estate to her brother Martin and sister Elizabeth. A codicil was executed in 1981 which expressly revoked paragraph three of the will. It provided as follows:

I direct my Executors to sell my house in Correctionville, Iowa, and the household goods therein, except my dining table and six chairs which I herewith bequeath to my nephew, Darrel Kotalik, who has admired same. The proceeds of the same shall be subject to the payment of the foregoing stipends for the repose of my soul as well as the costs and expenses of administration of my estate, and the remaining proceeds thereof, after the expenses of said sale, *as well as the residue of my estate* shall be divided equally among my following nephews: Daniel Martin Schreiner, Darrel Kotalik, Stanley Kotalik, and Melvin Kotalik.

I hereby confirm and ratify the said will in every respect, excepting in so far

as any part of its is inconsistent with this codicil.

(emphasis supplied).

In March 1981 decedent's farm was sold in a partition action, and in December of that year she died. A dispute arose concerning the residue of the estate and, in particular, the proceeds from the sale of the farm. In an action to construe the will and codicil, Elizabeth Kotalik's counsel argued the four nephews were to receive the residue, including the proceeds from the sale of the farm, since that bequest had adeemed. Martin's counsel argued that decedent had intended for him to receive one-half of the farm, including the proceeds if it were sold. He claimed the bequest had not adeemed, and also that the will was ambiguous and extrinsic evidence would show testatrix's intent that the proceeds go to Martin and his sister.

The attorney who had drafted decedent's will and codicil testified, over the objection that extrinsic evidence was inadmissible, that after the codicil was executed, decedent understood that Martin and Elizabeth would still receive the farm and that he could not remember if he explained to her the effect of a sale on the devise of the farm.

The court decided that when the farm was sold, the devise to Martin and his sister had adeemed. Further, the will was not ambiguous and no extrinsic evidence would be allowed to interpret the intentions of the testatrix. It found that the codicil provisions regarding the residue of the estate prevailed over the provision in the will, and that the nephews and churches were the beneficiaries of the estate. The court further indicated the result it reached would be the same, even if it had considered extrinsic evidence.

On appeal, Martin's counsel concedes that an ademption has occurred. Instead, he argues that the court erred in finding there was no ambiguity and in its interpretation of the will. He claims that the will and codicil may be interpreted so that there are two residues, the residue to Martin and Elizabeth, and the residue of the codicil to

the nephews. This results in an ambiguity, and extrinsic evidence should be allowed, he says. Appellant argues the word "residue" in substituted paragraph three is ambiguous and extrinsic evidence would prove that testatrix intended the residue to include "residue of my estate other than the proceeds of the sale of my farm."

In this case, as in all equity cases, our review is de novo. Iowa R.App.P. 4. When a will is presented for interpretation, the court will look to the four corners of the will; exploring the language of the will, the scheme of distribution, and facts and circumstances surrounding making of the will. *Matter of Estate of Kalouse*, 282 N.W.2d 98, 100 (Iowa 1979). The testator's intent is the polestar, and if expressed, controls however, extrinsic evidence may not be presented in attempts to prove the testator's intent was not the same as that expressed by the language of the will or to vary, contradict, or add to the terms of the will. *Id.* at 100, 104 (citations omitted). The purpose of this rule is to give effect to the requirement that all wills be expressed in writing. *Id.* at 104. We cannot add to the will on the basis of oral testimony regarding what was said during the making and execution of the will. *In re Winslow's Estate*, 259 Iowa 1316, 1323, 147 N.W.2d 814, 818 (Iowa 1967).. Further, courts will not, from oral testimony, make a will the testator might have intended to make, but did not in fact make. *Id.* Courts have no authority to remake the testator's will even if it thinks a different provision for disposition of property should have been made. *Buchan v. Buchan*, 254 Iowa 566, 572–73, 118 N.W.2d 611, 615 (Iowa 1962), 100 A.L.R.2d 1063 (1965). They must abide by established rules rather than principles of equity and justice. *In re Estate of Lamp*, 172 N.W.2d 254, 257 (Iowa 1969).

When construing a will and codicil, we interpret them as one instrument, executed on the date of the codicil unless the testator's intent is shown to the contrary, and each part should be considered

in relation to the others, giving effect to every provision where possible. *Estate of Randall v. McKibben,* 191 N.W.2d 693, 698 (Iowa 1971). A will is construed to avoid repugnancy, if possible. *In re Estate of Lamp* at 257. However, the codicil supercedes the will to the extent it is incompatible with the will. *Elkader Production Credit Association v. Eulberg,* 251 N.W.2d 234, 238 (Iowa 1977). When a provision of the codicil and will are clearly repugnant, the codicil prevails and it is irrelevant whether the codicil, in specific words, revokes the incompatible provision of the will. *Id.*

 In using these rules of construction, it is evident that paragraph six of the will giving the residue to Martin and Elizabeth is repugnant with paragraph three of the codicil which states the "residue of my estate" shall be divided among certain nephews. There can be but one residuary clause in a will. *In re Martman's Estate,* 233 Iowa 405, 410, 9 N.W.2d 359, 363 (1943). The supreme court in another instance has declared that where there are two residues, one must fail, and it is the last in time which prevails. *Covert v. Sebern et al.,* 73 Iowa 564, 568, 35 N.W. 636, 638 (1887).

Reading the will and codicil together, the first paragraph leaves the farm to Martin and Elizabeth, the second paragraph is changed regarding the amount of stipends for masses, paragraphs three and six of the will are substituted by the codicil to give the residue to the nephews. Paragraphs four and five regarding the executors remains the same.

 This does not result in two residues, but only one. Therefore, there can be no ambiguity resulting from two residues appearing in the will and codicil.

 Appellant also says the term "residue" may be interpreted to exclude the farm proceeds. He says the term "residue" is ambiguous since the farm no longer exists. Nothing appears in the will to show "residue" means anything other than what was expressed, "the residue *of my estate.*" There is no language limiting "residue" to everything except the farm proceeds. The only other alternative is to accept the proposal that a latent ambiguity occurs when a bequest adeems.

A latent ambiguity has been defined as occurring when the description of the devisee or subject matter of the devise is clear on the face of the will, but describes more than one person or thing. 95 C.J.S. Wills § 636 (1957). It also can occur when the description is correct in part and incorrect in part. *Id.* Our courts have generally described a latent ambiguity as occurring when some matter outside the will makes the meaning obscure or uncertain. *Bankers Trust Co. v. Allen,* 257 Iowa 938, 944, 135 N.W.2d 607, 611 (1965); *In re Lepley's Estate,* 235 Iowa 664, 670, 17 N.W.2d 526, 529 (1945). In regarding misdescriptions of real estate, the courts have limited the doctrine of latent ambiguity to include only that situation where the testator describes land he does not own, but parol evidence shows he intended to devise similar land. *See, e.g., Pring v. Swarm,* 176 Iowa 153, 157 N.W. 734 (1916). It has been stated that addition of words to the testator's will is not allowed unless it is necessary to correct the description of the real estate, or involves some similar technical matter. *In re Rahfeldt's Estate,* 253 Iowa 72, 78, 111 N.W.2d 303, 307 (1961) (quoting 95 C.J.S. Wills § 589 (1957)).

 The authorities show that the doctrine of latent ambiguity was not intended to include the situation where the property devised no longer exists because it has adeemed. Further, to hold that this is a latent ambiguity would, in effect, nullify the doctrine of ademption. Every time property adeemed, extrinsic evidence would be permitted to show the testator's intent. This would take the doctrine too far. An ademption is an extinction of property, and when a specific devise is adeemed, no other property can take its place. *In re Estate of Wolfe,* 208 N.W.2d 923, 924 (Iowa 1973), 83 A.L.R.2d 1256 (1978); 96 C.J.S. Wills § 1177 (1957). The intent of the testator is an important element in an ademption. *Id.*

If we were dealing with the issue of ademption, the scrivener's testimony and other evidence might show it was not testatrix's intent the farm devise adeem. However, the question of whether the property adeemed has been conceded by the appellant, and is not the issue on appeal.

We find the court did not err in its interpretation of the will and codicil, and that there was no ambiguity which would have allowed extrinsic evidence to be presented.

AFFIRMED.