In the Matter of the ESTATE OF Marvin H. REDENIUS, a/k/a Marvin Redenius, Deceased.

Marie D. REDENIUS, Surviving Spouse, Appellant,

v.

Bryan REDENIUS and Roxene Redenius, Co–Executors, Appellees.

No. 88–1632.

Court of Appeals of Iowa.

Feb. 22, 1990.

K.L. Kober of Pickett & Kober, Waterloo, for appellant.

Gary R. Papenheim, Parkersburg, for appellees.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

DONIELSON, Presiding Judge.

Marie and Marvin were married in 1970. Each had been widowed from a previous marriage. Marvin had two adult children, Bryan and Roxene Redenius. Marie had nine children, eight of whom were adults at the time of the marriage. Prior to their marriage, Marie and Marvin signed an antenuptial agreement allowing each party to dispose of their property free from the claims of his or her spouse.

In 1979, both Marie and Marvin executed wills. The wills were essentially mirror-image wills, and the relevant provisions of Marvin's will are as follows:

### ARTICLE II

Subject to the foregoing and in lieu of my wife's statutory distributive share of my estate, I hereby devise and bequeath to my wife Marie should she survive me a life estate in my residence at the time of my death and all household contents therein, she to have the control, possession and income therefrom during her lifetime, and I devise and bequeath the rest, residue and remainder of my estate, whatever its nature and wherever situated, to my children Bryan and Roxene to be their property absolutely and without restriction in equal parts, shares and amounts.

Upon the death of my wife Marie, I hereby devise and bequeath my residence and household contents as follows: one-half of said residence and contents to my

children Bryan and Roxene in equal parts, shares and amounts, and one-half of said residence and contents to the children of my wife, Marlyn, Dorothy, Mary Ann, Arnold, Arleen, Ardis, Darlys, Frances and Larry in equal parts, shares and amounts, to be their property absolutely and without restriction.

I hereby define the word residence to mean my dwelling house and its premises.

## ARTICLE III

If my wife Marie predeceases me, I hereby devise and bequeath my residence and its premises and the household contents therein as follows: one-half of said residence and contents to my children Bryan and Roxene in equal parts, shares and amounts, and one-half of said residence and contents to the children of my wife, Marlyn, Dorothy, Mary Ann, Arnold, Arleen, Ardis, Darlys, Frances and Larry in equal parts, shares and amounts, to be their property absolutely and without restriction. Subject to the foregoing, I hereby devise and bequeath the rest, residue and remainder of my estate, whatever its nature and wherever situated, to my children Bryan and Roxene to be their property absolutely and without restriction in equal parts, shares and amounts.

## ARTICLE IV

Prior to my marriage my wife and I entered into an Antenuptial Agreement dated June 24, 1970 and the above is all that I give her under this will and testament because of said agreement.

## ARTICLE V

If my wife survives me, I give, devise and bequeath unto her one-half of the adjusted gross estate or $250,000.00, whichever is greater, to the extent that the marital tax deduction will equal the maximum marital tax deduction allowed by the then applicable federal estate tax law.

Article I of the will provided for the appointment of Marvin's children as coexecutors of his estate.

Marvin died in September 1987. Marie survived his death. After the will was admitted to probate, Marie filed an application for construction of the will. Following a hearing, the district court determined the will was ambiguous and contained conflicting provisions. After considering all parts of the will and extrinsic evidence, the court concluded Article V was not reflective of the testator's intent and struck it from the will.

Marie appeals the district court decision and contends the provisions of Marvin's will were not ambiguous, the court erred in admitting extrinsic evidence, and the court should not have struck Article V, but should have reordered the articles of the will to avoid repugnancy.

### I. *Scope of Review.*

 Our review is de novo. In a de novo review, we make findings of fact anew; however, when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. *In re Estate of Crist,* 434 N.W.2d 904, 905 (Iowa App.1988); *In re Estate of Nagl,* 408 N.W.2d 768, 771 (Iowa App.1987).

### II. *Legal Principles.*

 When a will is presented for interpretation, a court will look to the four corners of the will, exploring the language of the will, the scheme of distribution, and facts and circumstances surrounding making of the will. The testator's intent is the polestar and must prevail. *In re Estate of Eickholt,* 365 N.W.2d 44, 46 (Iowa App. 1985). In ascertaining the intent of a testator, we rely primarily on the language contained in the will; however, the substance and intent, rather than the words, are to control. *Russell v. Johnston,* 327 N.W.2d 226, 229 (Iowa 1982).

 In construing wills, meaning and effect should, if reasonably possible, be given to every provision, clause, and word. *Houts v. Jameson,* 201 N.W.2d 466, 469

(Iowa 1972). A will should be construed to avoid repugnancy if possible. *Estate of Eickholt,* 365 N.W.2d at 47.

### III. *Extrinsic Evidence.*

■ Marie claims the trial court erred in admitting extrinsic evidence to interpret the will. When the terms of a will are clear, plain, and unambiguous, reference to extrinsic material facts is not allowed. *Estate of Nagl,* 408 N.W.2d at 772. Before extrinsic evidence may be admitted to show a testator's intent, a patent or latent ambiguity must be shown. *Id.*

■ "A patent ambiguity is that which appears on the face of the will and arises from the phraseology or the defective, obscure, doubtful, or uncertain language." *In re Estate of Lepley,* 235 Iowa 664, 670, 17 N.W.2d 526, 529 (1945). *See also* 95 C.J.S. *Wills* § 636 (1957) (definition of patent ambiguity). A latent ambiguity exists where the language of the instrument does not lack certainty, but some extrinsic or collateral matter outside the will renders the meaning obscure and uncertain. *Estate of Lepley,* 235 Iowa at 670, 17 N.W.2d at 529.

■ The trial court correctly found Marvin's will was ambiguous. Article II provides in lieu of her statutory distributive share of his estate, Marie was to receive a life estate in Marvin's residence and the household contents and the "rest, residue and remainder" of his estate "whatever its nature and wherever situated" was to go to his children to be "their property absolutely and without restriction." Article IV makes reference to the parties' antenuptial agreement in which each had contracted away their right of inheritance in the other spouse's property. Article IV refers to the agreement and states *"the above is all* that I give her [Marie] under this will and testament because of said agreement." (Emphasis added.)

Despite the absolute and conclusive nature of Articles II and IV with regard to what Marie is to inherit, Article V proceeds to award her one-half of Marvin's gross estate or $250,000, depending upon the maximum federal marital deduction al-

lowed at the time of Marvin's death. This last article is inconsistent with the language found in Articles II and IV. Article II leaves Marie only a life estate in the residence and household goods; the rest of Marvin's estate is to go to his children. Article IV states the "above is all" Marvin intends to leave her under the will. In stark contrast, Article V bequeaths Marie one-half of Marvin's estate or $250,000, whichever is greater. A patent ambiguity exists between the first four articles of Marvin's will, which profess to completely dispose of Marvin's estate, leaving Marie only a limited life estate, and Article V, which leaves her a substantial portion of his estate. Extrinsic evidence was properly admitted to assist in the interpretation of these conflicting provisions.

### IV. *Interpretation of Marvin's Will.*

■ A review of Marvin's will reveals the first four articles represent a logical progression. The first appoints coexecutors, the second addresses the disposition of all of his property should his wife survive him, the third disposes of all of his property should his wife predecease him, and the fourth makes reference to the parties' antenuptial agreement and conclusively states "the above is all I give her [Marie] under this will and testament because of said agreement."

The property disposition set out in the fifth article is inconsistent with and undercuts the specific intent of the first four articles. Extrinsic evidence presented at trial revealed the attorney who drafted the will routinely added marital deduction clauses similar to the fifth article to the wills he drafted for married couples. The testimony of Marie Redenius regarding her husband's testamentary intent was contradictory and undermined her claim that Article V reflected Marvin's intent with regard to the disposition of his property.

At the time the wills were executed, Marie owned a 140–acre farm (the Cornelius Farm) and Marvin owned a 160–acre farm (the Redenius Farm). Marie testified it was her and Marvin's intent to pass their respective property on to their children,

and she intended that upon her death only her children were to share in her farm. The trial court pointed out to Marie that she and Marvin had nearly identical wills and it was inconsistent for her to insist upon giving effect to Article V in his will while claiming only her children were to share in her estate under her will.

The trial judge had the opportunity to assess the credibility of Mr. Behnke, the attorney who drafted the parties' wills. The trial court concluded there was a lack of due care in preparing Marvin's will and the actual drafting was unprofessional and contrary to the testator's intent for the distribution of his estate. The trial court heard the testimony of both Behnke and his secretary and concluded Article V was included in the will merely because Behnke routinely included marital tax deduction clauses to wills he prepared for married couples. From our review of the record, we find no reason to differ from the trial court's assessment in this regard.

Marie asserts we should restructure the articles of the will in the following order: V, II, IV, III, and I. Pursuant to such a reordering, she would receive the substantial bequest found in Article V and the life estate established in Article II. Marie claims rearrangement of the articles would fully provide for her as Marvin intended and would give effect to every provision of the will.

While it has been held the arrangement of a will and the order of its clauses are not controlling and may be of little significance, *In re Estate of Miguet,* 185 N.W.2d 508, 513–14 (Iowa 1971); *In re Estate of Roberts,* 171 N.W.2d 269, 272 (Iowa 1969), the form and order of the clauses in Marvin's will are critical. Article IV refers to the antenuptial agreement and explains in light of that agreement "the above is all that" Marvin leaves Marie under his will. This language suggests Article I through IV govern completely the extent of any bequests Marvin made to Marie. To reorder the will to place Article V before the conclusive language of Article IV would deny the intent of the testator and make Article IV meaningless.

In further support of her interpretation of the will, Marie claims preference is to be given to provisions for a widow in lieu of dower. The only support she offers for this position is *In re Estate of Noe,* 195 N.W.2d 361, 364 (Iowa 1972), which addressed the preference which must be accorded provisions for widows in cases involving the abatement of claims to pay off estate debts. *Estate of Noe* is not applicable to this case.

Marie's argument that the latter of two repugnant clauses must prevail is also rejected. "Between two inconsistent provisions in a will, the first will control and the second is void as being repugnant to the first." *In re Estate of Flannery,* 221 Iowa 265, 271, 264 N.W. 68, 71 (1936), *overruled on other grounds, In re Estate of Ferris,* 234 Iowa 960, 14 N.W.2d 889 (1944). *See also Estate of Roberts,* 171 N.W.2d at 272 (later paragraph which defeats, destroys, or limits earlier paragraph is void).

The first four articles of the will reflected Marvin's testamentary intent. Article II completely disposed of Marvin's property, and Article IV refers to the antenuptial agreement and indicates the limited life estate granted Marie under Article II was all Marvin intended to give her under the will. The language in Article II reveals Marvin intended to leave the remainder of his estate to his children, and that intent must govern and be respected. This interpretation of the will is consistent with both a statement made by Marvin to a banker a month before his death in which he indicated he was leaving everything to his children and with Marvin's knowledge of his daughter's total disability which prevented her from working.

While it is preferred that all provisions of a will be given effect, *Conn v. Williams* 353 N.W.2d 411, 414 (Iowa 1984), the overriding concern is implementation of the testator's intent. In ascertaining a testator's intent, courts may sometimes discard words found in a will. *Estate of Miguet,*

185 N.W.2d at 513. Articles I through IV reflect Marvin's intent, and the contradictory provisions of Article V are repugnant to the scheme of distribution contained in Articles I through IV and must be struck. The decision of the trial court is affirmed.

AFFIRMED.