# IN THE COURT OF APPEALS OF IOWA

No. 22-2045
Filed January 10, 2024

**IN THE MATTER OF THE ESTATE OF VERONICA J. ROETHLER, Deceased.**

**DAVID H. ROETHLER and DALE F. ROETHLER,**
    Appellants.
_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

Appellants appeal the district court's decision considering extrinsic evidence in interpreting decedent's will. **REVERSED AND REMANDED.**

Beau D. Buchholz of Engelbrecht and Buchholz, PLLC, Waverly, for appellants.

Justin E. LaVan and Brandon M. Hanson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Heard by Bower, C.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

David Roethler and Dale Roethler appeal the district court's decision considering extrinsic evidence in interpreting the will of their late mother, Veronica Roethler. We determine the will as written was not ambiguous and the district court improperly considered the testimony of the scrivener of the will to find Veronica's intent was different from the language of the will. The court rewrote the will to include property in a trust that was not specified by the will to be included in the trust. We reverse the decision of the district court and remand for further proceedings.

## I.    Background Facts & Proceedings

Veronica was the mother of David, Dale, and Diane Roethler. Veronica owned farmland in section 31 and section 32 of Chickasaw County, and the two properties were divided by Gilmore Avenue. Section 31 property contained 111.75 acres and included the homestead. Section 32 property contained 151 acres. On June 25, 2020, Veronica executed a last will and testament in the office of attorney Kristen Ollenburg.[1] The will nominated Diane as the executor.

Under the subheading Farm Real Estate, the will set out the legal description for the land contained in section 31. The will provided Diane was to hold the property in trust with the following conditions: (1) Diane could reside in the homestead for the remainder of her life; (2) all of the principal and corpus of the trust would be preserved intact; (3) each of Veronica's three children would receive 33.3% of the net income from the trust estate; (4) at the death of Veronica's last

---

[1] Veronica's spouse was deceased when she executed her will.

surviving child, 50% of the net income from the estate would be given to the children of Diane and 50% to the children of David; (5) upon the death of her last surviving grandchild, the trust would terminate and the property would be distributed to the great-grandchildren of Diane and David; (6) during the term of the trust, no farmland could be sold.

The next provision in the will had the subheading, Remainder of Estate. This provision states:

> I bequeath the residue of my estate to my children in equal shares, so as to provide one share for each then living child of mine and one share for each deceased child of mine leaving children who survive me, subject to the terms of Article VIII.[2]  A share set aside for the children of a deceased child of mine shall be distributed per stirpes and not per capita.

Under the will as written, section 32 farmland was governed by this residuary provision, rather than placed in trust like section 31 farmland.  David, Dale, and Diane would each receive 33.3% of section 32 farmland.  Ollenburg and Veronica reviewed the will, and Veronica signed it on June 25, 2020.

Veronica died on December 16, 2021.  Diane petitioned for probate of the will.  She was appointed as the executor of Veronica's estate.  As the executor, Diane petitioned for declaratory judgment interpreting the will, claiming the will contained a latent ambiguity.  She claimed Veronica intended to include all of her farmland under the subheading "Farm Real Estate" so all of the farmland would be included in the trust.[3]  Diane asserted Ollenburg "inadvertently and mistakenly left

---

[2] This portion of the will provides that beneficiaries would not receive a share of the trust income until they were twenty-five years old.

[3] The estate inventory shows the section 31 property was worth $1,180,000 and the section 32 property was worth $1,720,000 at the time of Veronica's death. Diane claimed all the farmland, worth $2.9 million, should be included in the trust.

out part of the 'Farm Real Estate' which was owned by the Decedent when she was drafting the will, contrary to the intent of the Decedent." Diane asked the court to construe the will to include section 32 farmland under the subheading of Farm Real Estate.[4]

David and Dale challenged the executor's requested relief and asked the court to proceed with a plain reading of Veronica's will. They claimed there was no ambiguity in the will on its face. They asserted that the court should not consider extrinsic evidence to contradict or add to the terms of the will.

David and Dale also filed a motion in limine seeking a prohibition on the introduction of extrinsic evidence. They stated there was no ambiguity in Veronica's will and the court should prohibit extrinsic evidence. The executor resisted the motion. The court, which specifically pointed out that the proceedings were in equity, denied the motion in limine. The court stated, "We'll make a record on the evidence. I'm not saying I will not apply the principles you're arguing, but let's have a full record before those issues are dealt with."

At the hearing, Ollenburg was asked what Veronica told her she wanted in her will. David and Dale objected on the ground of hearsay. The court overruled the objection, noting they were in equity and the court could give the evidence "whatever weight, if any, it should be afforded." Ollenburg testified:

> Veronica indicated that her current will that was in place at that time had given everything to her three kids equally, but she was scared that David and Dale, her two sons, would want to sell the farm and split it up, and she did not want that to happen. She wanted all—

---

[4] Diane moved for summary judgment on this issue, which the court denied, finding there were genuine issues of material fact related to Veronica's intent for the disposition of her real estate.

all of her farm real estate to be held in a trust so that it would be preserved for future generations and couldn't be sold.

Ollenburg also testified, "Veronica had trusted me to ensure that all of her farm real estate was listed and included in the trust, and it was not."

The district court found:

> Diane is asking the court to go outside the specific reading of Veronica's will and make a factual finding that Veronica intended to include all of her land in the trust. Article VI of [ ] Veronica's will is headed "Farm Real Estate." It than provides "I own real estate in Chickasaw County, Iowa legally described as" and contains an incomplete legal description of all of her land. The provision finally provides "upon my death, I give, devise and bequeath said real estate to my daughter, Diane Roethler, to be held in trust . . . ."
> The parcel of real estate not included in the property placed in trust is never mentioned in the will. The parcel is valued at $1,720,000.00 in the executor's inventory. The total value of the estate is $2,998,649.00. Therefore, an asset with a value of more than one-half of the estate is never discussed. The court finds the will is vague as to what real estate was intended to be included in the trust. Therefore, extrinsic evidence may be considered in determining Veronica's intent.

Because the court found the will was ambiguous, the court considered Ollenburg's testimony and determined it was Veronica's intent to place all of the farmland in the trust. The court granted the motion for declaratory judgment. David and Dale appeal the district court's decision.

## II.    Standard of Review

A declaratory judgment to construe or interpret a decedent's will is tried in equity and our review is de novo. *In re Est. of Kruse*, 250 N.W.2d 432, 433 (Iowa 1977). In a de novo review, we must make findings of fact anew; however, when considering the credibility of the witnesses we give weight to the fact findings of the district court, although we are not bound by them. Iowa R. App. P. 6.904(3)(g); *Russell v. Johnston*, 327 N.W.2d 226, 228 (Iowa 1982).

### III.     Motion in Limine

David and Dale claim the district court should have granted their motion in limine to exclude extrinsic evidence to support Diane's assertion the will was ambiguous.

We have previously noted that a motion in limine becomes moot when the parties agree to a bench trial.  *See Short v. Elliott Equip. Co.*, No. 16-1795, 2018 WL 540336, at *5 (Iowa Ct. App. Jan. 24, 2018).

> Motions in limine are generally unnecessary and superfluous in bench trials, as the judge deciding the case is going to become aware of the evidence the moving party seeks to exclude at some point anyway, either in ruling on the motion or in ruling on objections made at trial, so there is no need to insulate the factfinder from the disputed evidence like there is in a jury trial.

*DSM Inv. Grp., LLC v. City of Des Moines*, No. 21-1887, 2022 WL 4362323, at *3 (Iowa Ct. App. Sept. 21, 2022).

The court was aware of these principles when it denied the motion in limine. The court did not rule that it would consider the extrinsic evidence but stated all the evidence should come in and then the court would determine the evidence that should be considered.  We conclude the court did not err in its ruling on the motion in limine.

### IV.     Ambiguity in the Will

David and Dale contend the district court improperly concluded the will was ambiguous, so that extrinsic evidence could be considered.  They assert that looking only at the four corners of the will, the plain language of the will was not ambiguous.  They state the will could not be considered ambiguous unless

extrinsic evidence was considered to raise questions about the plain language of the will.

On the issue of the interpretation of wills, our supreme court has stated:

> In the interpretation of a will the primary and controlling consideration is the determination of the intention of the testator. When that has been done the intention must be made effective if it is a lawful one, and not against public policy. The intention of the testator must be ascertained from the will itself, and from nothing else, if its language is plain and unambiguous. Where the intention is thus clearly and unequivocally expressed there is no need for judicial construction, or extrinsic evidence, and all other rules of testamentary interpretation are inapplicable and must yield.

*Palmer v. Evans*, 124 N.W.2d 856, 859–60 (Iowa 1963) (citations omitted).

The intention of the testator "must be that which is manifest from the express language of the will or by necessary implication." *In re Est. of Syverson*, 32 N.W.2d 799, 801 (Iowa 1948). There is a strong presumption against finding a testator's intent that has not been set forth in the will. *Id.* "[A]fter a will is admitted to probate, a testator cannot testify. Intent should therefore be gleaned from the words of the will." *In re Est. of Kiel*, 357 N.W.2d 628, 631 (Iowa 1984).

A testator's intent is derived from "(a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution and (d) the existing facts." *In re Est. of Roethler*, 801 N.W.2d 833, 842 (Iowa 2011). "[E]xtrinsic evidence may not be presented in attempts to prove the testator's intent was not the same as that expressed by the language of the will or to vary, contradict, or add to the terms of the will." *In re Est. of Eickholt*, 365 N.W.2d 44, 46 (Iowa Ct. App. 1985); *accord In re Est. of Hamilton*, 467 N.W.2d 801, 803 (Iowa Ct. App. 1991) ("It is not the

function of the Court to make, remake, improve or otherwise modify the clear provisions of the will of a competent testator.").

Extrinsic evidence can only be considered in resolving issues of ambiguity in a will. *In re Steinberg Family Living Tr.*, 894 N.W.2d 463, 472 (Iowa 2017). There are two types of ambiguities—patent and latent. *In re Est. of Redenius*, 455 N.W.2d 295, 298 (Iowa Ct. App. 1990). "A patent ambiguity is that which appears on the face of the will and arises from the phraseology or the defective, obscure, doubtful, or uncertain language." *Id.* "A latent ambiguity exists where the language of the instrument does not lack certainty, but some extrinsic or collateral matter outside the will renders the meaning obscure and uncertain." *Id.* "Latent ambiguities arise where either the subject of the devise or the devisee is ambiguous." *Kiel*, 357 N.W.2d at 631.

Extrinsic evidence is not admissible to show a testator's intent unless there is a patent or latent ambiguity in the will. *In re Est. of Anderson*, 359 N.W.2d 479, 481 (Iowa 1984); *In re Est. of Nagl*, 408 N.W.2d 768, 772 (Iowa Ct. App. 1987). "Hence, where there is no patent ambiguity, a will must be construed as written unless some latent or hidden ambiguity appears." *Kiel*, 357 N.W.2d at 630. Veronica's will contains no patent ambiguities. We turn then to whether there is a latent ambiguity.

Because a latent ambiguity involves an extrinsic or collateral matter outside the will, extrinsic evidence is necessary to show there is a latent ambiguity. *Anderson*, 359 N.W.2d at 481. "To discover a latent ambiguity it is proper to go outside the instrument to ascertain whether the words used aptly fit the facts existing when the instrument was executed." *Widney v. Hess*, 45 N.W.2d 233, 239

(Iowa 1950). However, "the extrinsic evidence in such a case is admitted only for that narrow purpose. No inquiry into the testator's intent by way of extrinsic evidence is appropriate until after existence of the ambiguity has been established." *Kiel*, 357 N.W.2d at 631.

As to the limited nature of the consideration of extrinsic evidence, the supreme court has noted:

> Such (extrinsic) evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.

*In re Est. of Lepley*, 17 N.W.2d 526, 529–30 (Iowa 1945) (quoting *McCoy v. Bradbury*, 235 S.W. 1047, 1049 (Mo. 1921)). The court found that extrinsic evidence "might indicate that the testator did not intend to say what he did say in the will, but the courts cannot draw his will for him." *Id.* at 529.

Also, "testators are presumed to have known the effect of the language of their wills." *In re Est. of Rogers*, 473 N.W.2d 36, 40 (Iowa 1991). "We will not, from oral testimony, make a will the testator perhaps intended to, but in fact did not, make." *Id.*; *accord Bankers Tr. Co. v. Allen*, 135 N.W.2d 607, 611 (Iowa 1965) (noting extrinsic evidence "may indicate decedent intended to say something he did not say but courts cannot draw his will to carry out a possible intent not expressed in the will"); *In re Est. of Roberts*, 35 N.W.2d 756, 758 (Iowa 1949) ("Courts will not re-draft wills from oral testimony."). This is based on the rule that

wills must be in writing;[5] the court "cannot add to the will on the basis of oral testimony regarding what was said during the making and execution of the will." *Eickholt*, 365 N.W.2d at 46.

The present situation is somewhat similar to that found in *In re Estate of Winslow*, where the scrivener of a will testified there was a typographical error in the will in the categorization of certain beneficiaries. 147 N.W.2d 814, 817–18 (Iowa 1967). The testator reviewed the will and signed it. *Id.* at 818. "The scrivener said that when the will was read after the decedent's death she was surprised to discover what she called her error." *Id.* The court did not consider the extrinsic evidence, stating, "Courts will not, from oral testimony, make a will the testator perhaps intended to, but in fact did not, make." *Id.* Also, "[i]t may be that testator's intent was as claimed by the appellants but that is not what he said in his will." *Id.* at 819.

"The use of a scrivener's word does not create an ambiguity because the question is not what the testator meant to say but what he meant by what he did say." *In re Est. of Crist*, 434 N.W.2d 904, 906 (Iowa Ct. App. 1988); *accord In re Est. of Kalouse*, 282 N.W.2d 98, 104 (Iowa 1979) (finding that even if a scrivener's testimony showed an intent different from that found in the will, "the heirs' problem is the principle against varying wills by extrinsic evidence."); *but see In re Est. of Fox*, No. 01-0178, 2002 WL 1585621, at *3 (Iowa Ct. App. July 19, 2002) (finding a scrivener's testimony of the testator's intent could be considered when there was a patent ambiguity in the will, as the same property was designated twice); *Covert*

---

[5] Under Iowa Code section 633.279(1) (2021), to be valid all wills must be in writing and signed by the testator.

*v. Sebern*, 35 N.W. 636, 637 (Iowa 1887) (finding extrinsic evidence provided by a scrivener of a will could be considered to show there was a misspelling in the name of a beneficiary, as the will named a person who did not exist). Thus, in general, "extrinsic evidence of [the testator's] declarations to the scrivener may not be used to construe the will." *Kalouse*, 282 N.W.2d at 106.

We assume a testator "selected the language adopted to express his meaning and he knew and appreciated the effect of the language used in his or her will." *In re Est. of Cross*, 551 N.W.2d 344, 347 (Iowa Ct. App. 1996); *accord In re Est. of Todd*, No. 22-1211, 2023 WL 3860112, at *4 (Iowa Ct. App. June 7, 2023) ("For better or worse, our case law requires us to presume [the testator] knew the effect of the language used in her will, particularly when it was prepared by an experienced scrivener—as it was here.").

Veronica reviewed her will before signing it. She is presumed to know the meaning of the language used in the will. *See Cross*, 551 N.W.2d at 347. She is also presumed to understand the effect of the language used in the will. *See id.* Ollenburg's testimony does not create an ambiguity "because the question is not what [Veronica] meant to say but what [s]he meant by what [s]he did say." *See Crist*, 434 N.W.2d at 906. The will does not purport to transfer property not owned by the decedent, give different instructions for the same property, or contain a slight typographical error in designating property or a beneficiary. *See Covert*, 35 N.W. at 637; *Eckford v. Eckford*, 58 N.W. 1093, 1093 (Iowa 1894); *Fox*, 2002 WL 1585621, at *3. We find the general rule applies—that "extrinsic evidence of [Veronica's] declarations to the scrivener may not be used to construe the will." *See Kalouse*, 282 N.W.2d at 106.

We determine the district court improperly considered the extrinsic evidence presented by Ollenburg's testimony to change the terms of Veronica's will. As noted, "Extrinsic evidence is not admissible to vary, contradict or add to terms of the will or to show an intention different from that disclosed by the language of the will." *See Rogers*, 473 N.W.2d at 39. Veronica's "[i]ntent should therefore be gleaned from the words of the will." *See Kiel*, 357 N.W.2d at 631. We do "not re-draft wills from oral testimony." *Roberts*, 35 N.W.2d at 758. As noted, under section 633.279(1), wills must be in writing. For this reason, the court "cannot add to the will on the basis of oral testimony regarding what was said during the making and execution of the will." *Eickholt*, 365 N.W.2d at 46.

We reverse the district court's decision that rewrote Veronica's will to include property in a trust that was not specifically set out in the language of the will. The will as written is not ambiguous because Veronica could have intended to place the farmland around the homestead in a trust, while permitting the remainder of the farmland to pass through the residuary clause. We are bound by the words of the testator contained within the will. We reverse the decision of the district court and remand for further proceedings.

**REVERSED AND REMANDED.**